**STATE of Missouri, Respondent,**

v.

**Arthur REED, Appellant.**

**No. ED 93743.**

Missouri Court of Appeals,
Eastern District,
Division Five.

Feb. 8, 2011.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 10, 2011.

Application for Transfer Denied
April 26, 2011.

Alexandra E. Johnson, St. Louis, MO, for appellant.

Chris Koster, Atty. Gen., Daniel N. McPherson, Jefferson City, MO, for respondent.

GARY M. GAERTNER, JR., Presiding Judge.

### Introduction

Arthur Reed appeals from a judgment of conviction for burglary in the second degree, resisting arrest, stealing under $500, trespassing in the first degree, and property damage in the second degree. He asserts that there was insufficient evidence to support his convictions for resisting arrest, burglary, and trespassing; and that the trial court erred in allowing the State to present hearsay evidence, and in denying his motion for a new trial stemming from the State's Brady[1] violations. We affirm.

### Background

Reed was indicted as a prior and persistent felony offender for one count each of burglary in the second degree, in violation of Section 569.170 RSMo 2000; resisting arrest, in violation of Section 575.150 RSMo Supp.2005; stealing under $500, in violation of Section 570.030 RSMo Supp. 2005; trespass in the first degree, in violation of Section 569.140 RSMo 2000; and property damage in the second degree, in violation of Section 569.120 RSMo 2000. At the beginning of the trial, Reed stipulated and the trial court found that Reed was a prior and persistent felony offender, having pled guilty in 1997 to five counts of burglary in the second degree, and in 1999 to one count of burglary in the second degree. The following evidence and testimony was adduced at the July 2009 jury trial.

On August 25, 2008, Jerry Warden saw Reed attempting to enter an unoccupied home (the first house). When Reed was unable to force the door open, he entered a second unoccupied home under renovation (the second house) and left approximately

---

1. *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

30 seconds later holding a hammer. Reed then used the hammer to pry open the door of the first house. Warden called 911 to report that a heavy set male wearing shorts and a gray sweatshirt was breaking into homes. Upon police arrival shortly thereafter, Reed ran from the first house and into the road, forcing a car to stop abruptly, and fled down an alley.

Officer Matthew Tesreau followed Reed on foot, responding to reports of Reed's location. Reed began running when he saw Officer Tesreau, dressed in uniform, despite orders to stop. Officer Tesreau caught up with Reed and ordered him at gunpoint to stop because he was under arrest. Reed complied, and Officer Tesreau holstered his gun and took out his taser. Officer Tesreau testified to the following, regarding his use of the taser:

> [Officer Tesreau]: I advised [Reed] to get on the ground. He refused. I employed the device to tase him. Went to five second bursts.
>
> [State]: Was it—I mean describe that for us. I'm sure everyone doesn't know what a taser is. What exactly ... does it look like?
>
> [Officer Tesreau]: It's the same resemblance of a handgun. It's yellow.... It has a cartridge in the front with green doors in the front and has them on the bottom also. You deploy it. You use a little red laser and so you don't actually have to aim it, you can just look and know where it's going to hit. It shoots prongs out.... [T]he ones we use are 25 feet. Shoots prongs out. One goes straight and one comes down at an angle.
>
> ...
>
> [State]: And then two prongs actually come out and they stay connected to the taser?
>
> [Officer Tesreau]: Yes.

[State]: What is the taser designed to do?

[Officer Tesreau]: Just stun, subdue someone.

[State]: Did it work here?

[Officer Tesreau]: At that time, no. I, one of the prongs I believe in the arm did not make contact correct.

[State]: Okay. So what happened?

[Officer Tesreau]: The individual stumbled for a moment. I again immediately dropped that cartridge. There's another cartridge on the bottom. I replaced the cartridge. Advised the subject to get on the ground, at which point he left the street and laid on the sidewalk and complied.

[State]: Then what happened?

[Officer Tesreau]: As I walked towards him I told him not to move, which he complied. As I began to walk up on him, which I was by myself, he began to push up and like he was going to get up. I told him not to get up and deployed a five-second taser in the back.

On cross-examination, counsel confirmed Officer Tesreau's testimony that he tased Reed twice, but did not ask if Officer Tesreau had tased Reed more than twice.

Officer Tesreau waited for backup officers before placing Reed under arrest. The officers took Reed back to the scene of the robbery, where Warden identified him. Officers found a hammer just inside the doorway to the first house, and the owner noted that the door had been forced open and that the hammer did not belong to him. The owner of the second house also noted that his door had been damaged, and identified the hammer as his. Neither owner had given Reed permission to enter the residences.

At trial, Warden testified that he identified "the defendant" at the scene, but was not asked to point out Reed as the man he

had earlier identified as the burglar. Warden also identified the clothes seized from Reed on the day of his arrest as matching the clothes worn by the burglar. Further, Officer Tesreau pointed to Reed as the person whom he arrested that day. At the close of the State's evidence, the court denied Reed's motion for acquittal.

The jury found Reed guilty of burglary in the second degree, resisting arrest, stealing under $500, trespassing in the first degree, and property damage in the second degree. Reed moved for judgment of acquittal or for a new trial, asserting, as relevant for this appeal, that the State had not met its burden of proving each and every element of its case.

At hearings on the motion, counsel for Reed orally added one point to his motion for a new trial: that the State did not disclose all favorable and potentially material evidence. He asserted he had learned after the jury verdict that data records regarding taser usage (number of times fired and voltage) are stored in the taser itself and that this information is available to police departments. Information downloaded from the taser after trial revealed that Officer Tesreau had fired the taser three times, rather than the two times he asserted at trial.[2] Reed requested a new trial, arguing that if he had known this information before trial, he could have used it to impeach the credibility of Officer Tesreau, raising questions of reasonable doubt with the jury. The court denied Reed's motion for a new trial.

The trial court sentenced Reed to consecutive sentences of fifteen years imprisonment for burglary in the second degree and seven years imprisonment for resisting arrest in the Missouri Department of Correction; and of one year confinement for stealing, six months confinement for

trespass, and six months confinement for property damage in the St. Louis Medium Security Institute, for a total of twenty-four years incarceration. This appeal follows.

## Discussion

### Point I

■ In his first point on appeal, Reed argues that the trial court erred in entering the judgment of conviction, because the State's evidence was insufficient to support a finding of guilt beyond a reasonable doubt for resisting arrest, in that Officer Tesreau did not testify that he informed Reed he was under arrest. We disagree.

■ We review challenges to sufficiency of the evidence supporting a criminal conviction for whether sufficient evidence was presented at trial from which a reasonable juror might have found the defendant guilty of all the essential elements of the crime. *State v. Gibbs*, 306 S.W.3d 178, 181 (Mo.App. E.D.2010). We accept as true all evidence supporting the jury's verdict, including all favorable inferences therefrom, and disregard all contrary evidence and negative inferences. *Id.*

Contrary to Reed's assertion on appeal, Officer Tesreau did testify at trial that he informed Reed he was under arrest before Reed fled. Specifically, he testified on cross-examination that before he tased Reed for the first time he "advised [Reed] to get down on the ground, that he was under arrest, which [Reed] did not, he did not comply to [sic]." (Trial Transcript at p. 281.) Accepting this testimony as true, as we must, there was sufficient evidence from which a reasonable juror might have found Reed guilty of resisting arrest. *Id.*

---

**2.** Reed testified that Officer Tesreau had shot him with the taser four times, although Reed

"was on his hands and knees with his hands behind his back."

Namely, the evidence established that Officer Tesreau was attempting to arrest Reed, that Officer Tesreau—while in uniform—shouted for Reed to stop because he was under arrest, that Reed fled both when the police first arrived and also from Officer Tesreau, and that during Reed's initial flight he ran into the road, forcing a passing car to stop abruptly in a manner that could have caused the driver injury. *State v. Daws,* 311 S.W.3d 806, 808–09 (Mo. banc 2010) (five elements of resisting arrest are: (1) law enforcement officer is making or attempting to make lawful arrest or stop; (2) defendant knew of or reasonably should have known of law enforcement officer's lawful attempt; (3) defendant resists by fleeing; (4) defendant resisted for purpose of thwarting law enforcement officer's lawful attempt to arrest or stop by threat of violence or by fleeing; and (5) defendant fled in manner that created substantial risk of serious physical injury to another).

Point denied.

## Point II

■ In his second point on appeal, Reed argues that the trial court plainly erred in allowing hearsay testimony when Officer Tesreau testified that another unidentified officer told him that Warden had identified Reed as the burglar. We disagree.

■ Reed concedes in his brief that because he failed to raise this issue in his motion for new trial, his claim of error was not properly preserved for appellate review; thus, he requests that we review this claim for plain error under Rule 30.20. Plain error review requires that this court find whether "manifest injustice" or a "miscarriage of justice" has actually occurred as a result of the trial court's error. *State v. Bynum,* 299 S.W.3d 52, 57 (Mo. App. E.D.2009).

■ A wrongful admission of hearsay testimony does not constitute plain error if the testimony was cumulative to other evidence properly admitted. *State v. McGee,* 284 S.W.3d 690, 703 (Mo.App. E.D.2009). Here, Reed objects to testimony by Officer Tesreau regarding Warden's identification of Reed at the scene of the crime after Reed's arrest, because Officer Tesreau was not present during Warden's identification, but rather, was informed of it by radio. Before Officer Tesreau took the stand, however, Warden had already testified that he identified the defendant at the scene. Officer Tesreau's testimony about Warden's on-site identification was cumulative. *Id.*

Moreover, Warden testified at trial and was available for cross-examination as to his on-site identification; thus, the Confrontation Clause was not implicated. *Guese v. State,* 248 S.W.3d 69, 72 (Mo.App. S.D.2008) (where declarant appears for cross-examination at trial, Confrontation Clause places no constraints at all on use of extrajudicial statements; Confrontation Clause is not violated when declarant is present to testify and submits to cross-examination); *see also State v. Perry,* 275 S.W.3d 237, 243–44 (Mo. banc 2009). We see neither manifest injustice nor a miscarriage of justice in the court's admission of Officer Tesreau's testimony. *Bynum,* 299 S.W.3d at 57.

Point denied.

## Point III

■ In his third point on appeal, Reed argues that the trial court erred in denying his motion for acquittal, because the State failed to present sufficient evidence to support convictions for burglary, trespassing, stealing, and property damage. We disagree.

Our review, as in Point I, is for whether there was sufficient evidence from which a

reasonable juror might have found the defendant guilty of all the essential elements of the crime. *Gibbs,* 306 S.W.3d at 181. We accept as true all evidence supporting the jury's verdict, including all favorable inferences therefrom, and disregard all contrary evidence and negative inferences. *Id.*

■ The crux of Reed's argument appears to be that because Warden did not make an in-court identification of Reed that the State per se failed to produce sufficient evidence to establish beyond a reasonable doubt that Reed was the person who entered the first and second houses. An in-court identification, however, is not mandatory where the witness's total testimony sufficiently identifies the defendant as the person who committed the crime. *State v. Gaines,* 316 S.W.3d 440, 455 (Mo.App. W.D.2010) (in-court identification not necessary when totality of evidence shows that defendant was person who committed crime); *State v. Baker,* 23 S.W.3d 702, 708 (Mo.App. E.D.2000) (there was sufficient evidence to identify defendant as accused, even where victim did not physically indicate defendant's presence in courtroom).

Here, trial testimony established that Warden witnessed "the defendant" attempt to enter house one, enter house two, leave house two with a hammer, and then use that hammer to gain entry to house one. The owners of the first and second houses both testified to damage to their doors, and both testified that they had not given Reed permission to enter. The owner of the first house testified that the hammer found in his house did not belong to him, and the owner of the second house testified that the hammer found in the first house belonged to him. After Reed was arrested, Warden identified him at the scene as the person he had seen entering the houses. At trial, Warden identified the clothes Reed was wearing when he was arrested, as matching the clothes worn by the burglar. Also at trial, Officer Tesreau made an in-court identification of Reed as the man he arrested on August 25, 2008, and testified that after Reed's arrest he was returned to the crime scene for Warden to identify.

Even without an in-court identification by Warden, the record and inferences sufficiently established that Reed was the person who committed the crimes. *Gaines,* 316 S.W.3d at 455; *Baker,* 23 S.W.3d at 708. Under our standard of review, there was sufficient evidence for a jury to have found Reed guilty of burglary, stealing, trespassing, and property damage. *Gibbs,* 306 S.W.3d at 181.

Point denied.

### *Point IV*

■ In his fourth point on appeal, Reed argues that the trial court erred in failing to grant his motion for a new trial, after evidence came to light post-verdict that the prosecution had withheld favorable evidence, in violation of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

■ An allegation of ·prosecutorial misconduct is a serious ·charge that this court will not treat lightly. We review for abuse of discretion a trial court's sanctions for *Brady* violations. *State v. Peeples,* 288 S.W.3d 767, 775 (Mo.App. E.D.2009); *see also U.S. v. Ladoucer,* 573 F.3d 628, 636 (8th Cir.2009). Under *Brady,* the prosecution is required to disclose evidence in its possession that is favorable to the defendant and is material to guilt or punishment. *State v. Goodwin,* 43 S.W.3d 805, 812 (Mo. banc 2001) (citing *Brady,* 373 U.S. at 87, 83 S.Ct. 1194). "The issue is not whether the defendant would more likely than not have received ·a different

verdict with the disputed evidence, but whether in its absence he received a fair trial." *Id.* A *Brady* violation occurs where the evidence is favorable to the defendant because it is exculpatory or impeaching, the evidence was suppressed by the State either willfully or inadvertently, and the suppression has prejudiced the defendant. *Id.* Prejudice in this context is interchangeable with materiality. *State v. Parker,* 198 S.W.3d 178, 184 (Mo.App. W.D. 2006). Evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result would have been different. *Id.* at 185.

Review of the record indicates that Reed's trial theory was to attack the weight and credibility of the State's evidence and witnesses. Nevertheless, it is evident that no *Brady* violation occurred here. First, Reed failed to prove that the newly discovered evidence was favorable to Reed. *Peeples,* 288 S.W.3d at 775 (burden on movant to prove *Brady* violation); *Goodwin,* 43 S.W.3d at 812. The evidence that Officer Tesreau fired the taser three times arguably did not contradict his trial testimony. At trial, he testified that he had fired the taser twice, and that the taser had misfired once. It is not clear from his testimony that he did not fire the taser three times. From the record before us, we cannot say that the newly discovered evidence could have been used to impeach the evidence presented at trial.

Even if the State's failure to disclose the taser evidence had constituted a *Brady* violation, Reed has failed to establish that this evidence was material to his defense. *Goodwin,* 43 S.W.3d at 812; *Parker,* 198 S.W.3d at 185. When assessing evidence's materiality, we take into account the cumulative effect of the suppressed evidence in light of other evidence, not merely the probative value of the suppressed evidence standing alone. *See Kyles v. Whitley,* 514 U.S. 419, 436–37, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995). Officer Tesreau was not the State's sole witness. Rather, Warden witnessed Reed commit four of the five charged offenses (burglary, stealing, trespassing, and property damage) and also flee at the officers' initial arrival. Warden's testimony is unaffected by the number of times that Officer Tesreau tased Reed. Moreover, the taser evidence does not contradict the remainder of Officer Tesreau's testimony. Reed's suggestion in his brief on appeal that because Officer Tesreau tased Reed three times rather than two, the reasonable inference to a jury is that Officer Tesreau also planted the hammer with the purpose of incriminating Reed, stretches this court's credulity too far. Considering all the evidence, we conclude that Reed received a fair trial. *Goodwin,* 43 S.W.3d at 812. The trial court did not abuse its discretion in denying Reed's motion for new trial.

Point denied.

### Conclusion

The judgment of the trial court is affirmed.

MARY K. HOFF and PATRICIA L. COHEN, JJ., concur.