**STATE of Missouri, Respondent,**

v.

**Johnnie MOORE, Appellant.**

**No. ED 99077.**

Missouri Court of Appeals,
Eastern District,
Division One.

Oct. 22, 2013.

Roxanna A. Mason, St. Louis, MO, for appellant.

Chris Koster, Daniel N. McPherson, Jefferson City, MO, for respondent.

ROY L. RICHTER, Presiding Judge.

Johnnie Moore ("Defendant") appeals from the trial court's judgment, following a jury's guilty verdict of two counts of rape and two counts of sodomy, in violation of Sections 566.030, RSMo Cum. Supp. 2010,[1] and 566.060, respectively. We affirm.

## I. BACKGROUND

In the interest of clarity and brevity, we will recite the procedural facts as they relate to the case and discuss additional facts and evidence as it relates to individual points in our analysis.

The relevant facts, viewed in the light most favorable to the jury verdict, are as follows. On the morning of July 26, 1985, fourteen-year-old V.V., while walking to George's Market Store, roughly two blocks from her home in the City of St. Louis, was attacked and apprehended by a man. The man grabbed V.V. from behind and placed a knife to her neck, cautioning her not to scream or attempt to escape. The man escorted V.V. to a garage in a nearby alley, where the man forced V.V. to perform oral sex and proceeded to vaginally rape her. The man fled after ejaculating. V.V. returned home, at which point the police were called and V.V.'s clothes were seized as evidence.

In the City of St. Louis, on the morning of October 1, 1985, sixteen-year-old K.P., while walking home from a friend's house where she had spent the previous night, was attacked and apprehended by a man. The man grabbed K.P. from behind and placed a knife to her neck, cautioning her not to scream or attempt to escape. The man escorted K.P. to a vacant building in a nearby alley, where the man forced K.P. to perform oral sex and proceeded to vaginally rape her. After the man fled, K.P. exited the vacant building, still naked, and ran to the adjacent school where the janitor assisted K.P. in contacting the police. K.P.'s clothes were recovered from the vacant building and seized as evidence.

Several months after both rapes, V.V. and K.P. were contacted, individually, by the police to review photographic line-ups. Both female victims identified a man named Lonnie Erby ("Erby") as their assailant. Erby was subsequently tried, convicted and sentenced in connection with

---

1. All statutory references are to RSMo Cum. Supp.2010, unless otherwise specified

both crimes. *See State v. Erby*, 735 S.W.2d 148 (Mo.App.E.D.1987). During the trial, both V.V. and K.P. testified that Erby was their rapist.

In 2003, at the behest of the Innocence Project, samples of V.V.'s and K.P.'s clothing underwent DNA analysis at the St. Louis Police Crime Laboratory. Sperm was discovered on both V.V.'s and K.P.'s clothing, and was thereby used to create DNA profiles. The DNA collected from both of the victim's recovered-clothing was matched to Johnnie Moore ("Defendant") in August of 2006.

In 2010, V.V. and K.P. were again shown photographic line-ups. V.V. was unable to identify her rapist, but K.P. identified Defendant as her rapist. Subsequently, Defendant was charged with the crimes relating to V.V. and K.P. Defendant proceeded to trial in 2012 in the City of Saint Louis.

Thereafter, the jury returned a guilty verdict on all four counts: one count of forcible rape and one count of forcible sodomy for each of the two victims, V.V. and K.P. The trial court denied Defendant's motion for a new trial.

This appeal follows.

## II. DISCUSSION

Defendant presents two points of error on appeal. In his first point, Defendant asserts the trial court erred in denying his motion for a new trial, in that the State failed to disclose and inadvertently suppressed favorable and impeaching evidence in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and Rule 25.03. Specifically, Defendant claims the State had a duty to discover and disclose its witness's (K.P.) suspended imposition of sentence ("SIS"), and in failing to do so, infringed upon Defendant's rights to a fair trial and due process, in violation of the Fifth, Sixth and Fourteenth Amendments of the United States Constitution and Article I, Sections 10 and 18(a) of the Missouri Constitution.

In his second point on appeal, Defendant claims the trial court erred in denying his motion for a new trial, in that the trial court permitted the State to introduce evidence regarding the details of Defendant's prior criminal convictions and permitted use of Defendant's prior criminal convictions to demonstrate Defendant's propensity to commit rape, thereby violating Defendant's right to be tried only for the offenses charged as guaranteed by the Fifth and Fourteenth Amendments of the United States Constitution and Article I, Sections 17 and 18(a) of the Missouri Constitution. Defendant claims that a review of Missouri case law should have disabused the trial court of the notion that *details* of prior criminal convictions can be used for impeachment or propensity purposes.

## Point I—State's Duty to Disclose Impeaching Evidence

In his first point on appeal, Defendant claims the State failed to disclose and inadvertently suppressed favorable and impeaching evidence, in violation of *Brady* and Rule 25.03.

During the course of the 2012 criminal trial, Defendant requested discovery from the State pursuant to Rule 25.03. The State delivered responses to Defendant's discovery requests. However, unbeknownst to the State, K.P.—one of the victims and a witness for the State—had a prior misdemeanor charge for stealing for which she received a suspended imposition of sentence disposition. The State did not become aware of the SIS until after the trial was complete; the State, nevertheless, informed Defendant immediately of the newly discovered information.

## Standard of Review

This Court reviews a trial court's denial of a motion for new trial, pursuant to Rule 29.11, for an abuse of discretion. *State v. Kelly*, 851 S.W.2d 693, 696 (Mo.App.E.D. 1993); *see also State v. Cooper*, 336 S.W.3d 212, 215 (Mo.App.E.D.2011). Under this standard, we must "determine whether the trial court's ruling constituted an abuse of discretion because it offended the logic of the circumstances or was arbitrary and unreasonable." *State v. Coleman*, 954 S.W.2d 1, 4 (Mo.App.W.D.1997); *see also Kelly*, 851 S.W.2d at 696 ("We find such abuse when the trial court's ruling clearly offends the logic of the circumstances or when it becomes arbitrary and unreasonable."). Thus, an abuse of discretion is found when reasonable persons could not differ as to the propriety of the action taken by the court. *Cooper*, 336 S.W.3d at 215.

## Analysis

█ Defendant asserts both a Rule 25.03 violation, as well as a *Brady* violation, "which is based on the constitutional requirement of due process." *State v. Parker*, 274 S.W.3d 551, 553 (Mo.App. W.D.2008). Each rule implicates different requirements; the State's discovery obligations under Rule 25.03 and its constitutional obligations under *Brady* are separate and distinct.[2] *State v. Perry*, 879 S.W.2d 609, 614 (Mo.App.E.D.1994) ("*Brady* is the law of the land. It requires disclosure of specified exculpatory information. Rule 25.03 is the law of the state. It requires disclosure of information requested by the defense."). In resolving this issue on appeal, it is first necessary to clarify the scope and obligation of each

rule; we, thus, review each alleged violation independently.

### A. Rule 25.03 did not require disclosure.

Upon the written request of a defendant in criminal proceedings, pursuant to Rule 25.03, the State is required to disclose and provide to the defendant certain information or material within the State's possession or control. *See generally* Rule 25.03.; *see also State v. Grant*, 784 S.W.2d 831, 835 (Mo.App.E.D.1990) (compliance with Rule 25.03 is mandatory, not discretionary). However, any information or material not covered by Rule 25.03 may still be requested by a defendant, but the trial court must approve such requests. *See* Rule 25.04(A) ("The defense may make a written motion in the court having jurisdiction to try said case requesting the state to disclose material and information not covered by Rule 25.03 . . . ."). Specifically at issue in the case at bar is subsection (A)(7) of Rule 25.03, wherein the State is mandated, upon the request of the defendant, to provide "[a]ny record of prior criminal convictions of persons the state intends to call as witnesses at a hearing or the trial[.]" Rule 25.03(A)(7).

During the discovery phase of this case, Defendant requested, *inter alia*, the following:

Any record of any prior criminal convictions of persons the State intends to call as witnesses at any hearing or the trial, including any witnesses or any evidence of any arrests, pleas of guilty or convictions of defendant.

K.P., one of the alleged victims and a witness for the State, had a prior misdemeanor charge for stealing for which she received a suspended imposition of sen-

---

**2.** Both Defendant and the State appear to confuse Rule 25.03 and *Brady* in their briefs and oral arguments. While they overlap, they are not the same and require separate analyses.

tence disposition. However, the State only notified Defendant of K.P.'s SIS after the trial was completed. Defendant, in his Motion for a New Trial, and now on appeal, contends the State failed to abide by the mandate set forth in Rule 25.03(A)(7). We disagree.

■ First, for purposes of Rule 25.03(A)(7) requiring the State to disclose during discovery its witnesses' prior criminal convictions, the State is not required to disclose that a witness received a suspended imposition of sentence because an SIS does not constitute a conviction. *Rogers v. State*, 265 S.W.3d 853, 855 (Mo.App.S.D. 2008). Therefore, the State did not violate Rule 25.03(A)(7) by failing to disclose K.P.'s SIS, because K.P.'s SIS was not a "prior conviction."

■ Second, Defendant's request for discovery, *supra*, expands the mandate of Rule 25.03(A)(7). Explicitly, Defendant's request for discovery seeks disclosure of any evidence of any arrests, pleas of guilty *and* prior convictions. Unfortunately, on its face, Defendant's request for discovery is poorly phrased and · ambiguous as to whether Defendant was seeking evidence of any arrests or pleas of guilty of any witness the State intended to call at any hearing or trial or just evidence of Defendant's arrests and pleas of guilty. Assuming, *arguendo*, Defendant's request for discovery sought evidence of any arrests or pleas of guilty of any of the State's intended witnesses, we find that said requests went above and beyond the unambiguous mandate of Rule 25.03(A)(7). *Buemi v. Kerckhoff*, 359 S.W.3d 16, 20 (Mo. banc 2011) (when interpreting Missouri Supreme Court Rules, the intent of the Rule is determined by considering the plain and ordinary meaning of the words used). Rule 25.03(A)(7) does not require the State to disclose their witness's arrest records or prior pleas of guilty. Besides prior "crimi-

nal convictions," the criminal histories and other background information of State witnesses are not discoverable for purposes of impeachment under Rule 25.03 without a showing of reasonableness and materiality, pursuant to Rule 25.04.

■ Furthermore, as made clear through prior case law, if a defendant seeks disclosure of the prior arrests and pleas of guilty of the State's witnesses, the defendant must make a written motion to the trial court requesting the State to disclose said information or material under the terms of Rule 25.04. *See* Rule 25.04; *see also State v. Thompson*, 985 S.W.2d 779, 791 (Mo. banc 1999) (arrests records of state witnesses are not covered by Rule 25.03); *see, e.g., State v. Simmons*, 944 S.W.2d 165, 179–80 (Mo. banc 1997) (Defendant requested, pursuant to Rule 25.04, the trial court order the State to disclose the prior criminal history, or "rap sheets" of all the State's witnesses); *State v. Taylor*, 944 S.W.2d 925, 931–32 (Mo. banc 1997) (arrests records of the State's witnesses were requested by defendant, pursuant to Rule 25.04, at the trial court, and reviewed on appeal for an abuse of discretion). Here, the Defendant made no Rule 25.04 request to the trial court. Therefore, the State did not violate the rules of discovery, and the trial court cannot be deemed to have abused its discretion, since the trial court's discretion was never invoked.

**B. *Brady* required disclosure, but nondisclosure was not prejudicial.**

The scope of the State's duty to disclosure under Missouri discovery rules overlaps, yet differs from, the scope of the State's duty to disclose under the doctrine established in *Brady*, and its progeny. *State v. Luton*, 795 S.W.2d 468, 477–78 (Mo.App.E.D.1990). "*Brady* and its federal progeny deal primarily with the constitutional implications of a prosecutor's fail-

ure to disclose evidence favorable to a defendant." *Grant,* 784 S.W.2d at 835.

In accordance with the dictates of *Brady,* the due process clauses of the Fifth and Fourteenth Amendments of the United States Constitution require the State "to disclose evidence in its possession that is favorable to the accused and material to guilt or punishment." *State v. Goodwin,* 43 S.W.3d 805, 812 (Mo. banc 2001) (citing *Brady,* 373 U.S. at 87, 83 S.Ct. 1194); *see also State v. Parker,* 198 S.W.3d 178, 179 (Mo.App.W.D.2006) (the State has a "broad" duty to disclose under *Brady* ). Moreover, the State "must disclose, even without a request, exculpatory evidence, including evidence that may be used to *impeach a government witness.*" *State v. Robinson,* 835 S.W.2d 303, 306 (Mo. banc 1992) (emphasis added); *see also Patel v. State,* 108 S.W.3d 82, 84 (Mo.App.E.D.2003). Suppression of such evidence equates to a constitutional violation. *Brady,* 373 U.S. at 87, 83 S.Ct. 1194.

As such, before there is a constitutional violation under *Brady,* the following three elements must be satisfied: (1) the State failed to disclose evidence that is favorable to the accused because it is either exculpatory or impeaching; (2) the State suppressed the evidence, either intentionally or inadvertently; and (3) the undisclosed evidence was prejudicial. *Parker,* 198 S.W.3d at 179–80 (citing *Strickler v. Greene,* 527 U.S. 263, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999)); *see also State ex rel. Engel v. Dormire,* 304 S.W.3d 120, 126 (Mo. banc 2010).

### (1) The evidence was favorable to the defense.

There is no dispute that K.P.'s SIS was impeaching evidence which was not disclosed. *See State v. Lynch,* 679 S.W.2d 858, 861 (Mo. banc 1984) ("Thus, a suspended imposition of sentence now carries with it the stain of certain undesirable attributes of a conviction, such as use for ... impeachment ....") (abrogated on other grounds); *State v. Urban,* 798 S.W.2d 507, 514 (Mo.App.W.D.1990) (impeachment of a witness with an SIS is permissible) (overruled on other grounds); *see also* Section 491.050; *see also U.S. v. Bagley,* 473 U.S. 667, 676, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985) ("Impeachment evidence, however, as well as exculpatory evidence, falls within the *Brady* rule.").

### (2) The State failed to produce Brady material.

As explained, *supra,* under *Brady,* due process requires the State to disclose to the defendant any evidence in its possession that is favorable to the defendant, regardless of the good faith or bad faith of the State. *Dormire,* 304 S.W.3d at 126; *Brady,* 373 U.S. at 87, 83 S.Ct. 1194; *see also Strickler,* 527 U.S. at 288, 119 S.Ct. 1936 ("an inadvertent nondisclosure has the same impact on the fairness of the proceedings as deliberate concealment"). As such, to prevent running afoul of *Brady,* the State "has a duty to learn of any favorable evidence known to others acting on the government's behalf in the case" and disclose that information to the defendant. *Kyles v. Whitley,* 514 U.S. 419, 437, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995).

Although the State did not learn of K.P.'s SIS until post-trial, Defendant argues that the State was in "possession," and, thus, failed to produce the records regarding K.P.'s SIS, because of the State's affirmative duty to learn of favorable evidence known to others acting on the government's behalf. *Kyles, supra.* However, "[i]n *Brady* case law, diligence is treated as a sub-requirement of possession[;]" if the State "diligently" searched for relevant information without avail,

"then the state is not viewed as having 'possessed' the information." *Merriweather v. State,* 294 S.W.3d 52, 55–56 (Mo. banc 2009). As unequivocally summarized by our Missouri Supreme Court:

> The government has no "affirmative duty ... to take action to discover information which it does not possess." *United States v. Tierney,* 947 F.2d 854, 864 (8th Cir.1991) (citation omitted). *See also United States v. Dunn,* 851 F.2d 1099, 1101 (8th Cir.1988) ("the government has no affirmative obligation to discover potentially exculpatory information which it neither possessed nor of which it was aware"). There is, therefore, no *Brady* violation if the government does not "possess" the material at issue. *Id.* In addition, the "prosecutor has no duty to undertake a fishing expedition in other jurisdictions in an effort to find impeaching evidence." *United States v. Stuart,* 923 F.2d 607, 612 (8th Cir.1991)[.]

*Merriweather,* 294 S.W.3d at 56 (quoting *U.S. v. Jones,* 34 F.3d 596, 599 (8th Cir. 1994)); *see also U.S. v. Risha,* 445 F.3d 298, 304 (3rd Cir.2006) ("prosecutors are not required to undertake a 'fishing expedition' in other jurisdictions to discover impeachment evidence").

■ Furthermore, there can be no *Brady* violation where the defendant knew or should have known of the material or where the information was available to the defendant from another source. *See Kyles,* 514 U.S. at 437, 115 S.Ct. 1555 (addressing only evidence "*unknown* to the defense" as a basis for a potential *Brady* violation) (emphasis added); *U.S. v. Graham,* 484 F.3d 413, 417–18 (6th Cir. 2007); *see also U.S. v. Rodriguez,* 162 F.3d 135, 147 (1st Cir.1998) ("The government has no *Brady* burden when the necessary facts for impeachment are readily available to a diligent defender"); *U.S. v.*

*LeRoy,* 687 F.2d 610, 618 (2nd Cir.1982) ("Evidence is not 'suppressed' if the defendant either knew, or should have known, of the essential facts permitting him to take advantage of any exculpatory evidence.") (internal citations omitted); *U.S. v. McKenzie,* 768 F.2d 602, 608 (5th Cir.1985) ("*Brady* does not oblige the government to provide the defendants with evidence that they could obtain from other sources by exercising reasonable diligence."); *see, e.g., U.S. v. Willis,* 997 F.2d 407, 412–13 (8th Cir.1993) (no *Brady* violation because evidence of government witness's plea agreement was a matter of public record); *U.S. v. Grintjes,* 237 F.3d 876, 880–81 (7th Cir.2001); *Bell v. Bell,* 512 F.3d 223, 236 (6th Cir.2008) (although sentencing records of government witness could have been used to impeach his credibility, there was no *Brady* violation because defendant failed to inquire further about the government's witness); *U.S. v. Infante,* 404 F.3d 376, 386–87 (5th Cir.2005) (no *Brady* violation because information was contained in a publicly accessible file).

Here, we find that the State was in "possession" of the information regarding K.P.'s SIS. *See Merriweather,* 294 S.W.3d at 56–57 (finding the State failed to make a diligent effort, pursuant to Rule 25.03, to locate the criminal records belonging to the victim because the State only ran a criminal check of the victim on REJIS). Therefore, although the suppression of K.P.'s SIS was inadvertent, the State was, nevertheless, constitutionally obligated, pursuant to *Brady,* to search, find and disclose.

### (3) Nondisclosure of Brady evidence was not prejudicial.

■ Having demonstrated the first two prongs of *Brady,* Defendant must show that he was prejudiced by the nondisclo-

sure of K.P.'s SIS. *Merriweather,* 294 S.W.3d at 54.

"Before determining whether the evidence meets the test for *Brady* prejudice, this Court must assess whether the evidence at issue is material" to Defendant's case. *Dormire,* 304 S.W.3d at 128 (citing *Strickler,* 527 U.S. at 282, 119 S.Ct. 1936); *see also State v. Reed,* 334 S.W.3d 619, 626 (Mo.App.E.D.2011) ("Prejudice in this context is interchangeable with materiality."); *see also Benn v. Lambert,* 283 F.3d 1040, 1053, n. 9 (9th Cir.2002) ("Evidence is not 'material' unless it is 'prejudicial,' and not 'prejudicial' unless it is 'material.'"). *Brady* evidence is deemed to be material if there is a "reasonable probability that its disclosure to the defense would have caused a different result in the proceeding." *Dormire,* 304 S.W.3d at 128. If "the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict" then the materiality standard is established. *Id.* (quoting *Kyles,* 514 U.S. at 435, 115 S.Ct. 1555). However, "[t]he question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Dormire,* 304 S.W.3d at 128 (quoting *Kyles,* 514 U.S. at 434, 115 S.Ct. 1555); *see also Bagley,* 473 U.S. at 680, 105 S.Ct. 3375 (rejecting the standard that would require a defendant to demonstrate that the evidence, if disclosed, probably would have resulted in acquittal); *see also U.S. v. Coppa,* 267 F.3d 132, 135 (2nd Cir.2001) ("*Brady* does not, however, require the prosecution to disclose *all* exculpatory and impeachment material; it need disclose only material that, if suppressed, would deprive the defendant of a fair trial.") (internal quotation marks and citations omitted).

In the present case, we conclude that the impact of K.P.'s SIS would not have placed the government's evidence against Defendant in such a different light as to undermine our confidence in the outcome of the trial. K.P.'s testimony was but a fraction of the evidence linking Defendant to the rapes of V.V. and K.P. K.P.'s testimony that she was raped by Defendant was corroborated, for example, by the DNA evidence and her out-of-court identification of Defendant. *See, e.g., Reed,* 334 S.W.3d at 626 ("When assessing evidence's materiality, we take into account the cumulative effect of the suppressed evidence in light of other evidence, not merely the probative value of the suppressed evidence standing alone."). As such, this Court concludes that the jury's verdict that Defendant raped and sodomized V.V. and K.P., undoubtedly was not based on K.P.'s testimony alone.

Furthermore, Defendant was afforded the opportunity to cross-examine K.P. During cross-examination, Defendant extracted testimony of K.P.'s prior testimony (and K.P.'s inability to recall said testimony) at the Erby trial, her prior misidentification of her rapist, and the differences regarding the physical description between K.P.'s statement to the police and Defendant's actual physical attributes. Evidence of K.P.'s SIS for an innocuous misdemeanor stealing charge, occurring more than ten years after being raped would not be the "straw that broke the camel's back;" even if the evidence could convince the jury to disregard K.P.'s testimony, the other evidence in the case, as aforementioned, was more than sufficient to sustain a finding of guilt.

The other evidence of Defendant's guilt on all four charges was sufficiently strong that the suppression of information regarding K.P.'s SIS would not have, within

a reasonable probability, produced a different result. Therefore, K.P.'s SIS was not material and we find no remediable *Brady* violation.

Point I is denied.

## Point II—Evidence of the Details of Defendant's Prior Convictions.

Point II is a claim of plain error directed at the State's introduction and use of evidence regarding the *details* of Defendant's prior convictions and the use of his prior criminal convictions to demonstrate Defendant's propensity to commit rape.

First, Defendant argues the State elicited details of Defendant's prior criminal convictions on cross-examination in violation of the parameters of impeachment. During the course of trial, on direct examination, Defendant testified and admitted to several prior criminal convictions, including a criminal conviction occurring in Michigan in the late 1970s. Defendant described that criminal conviction as "spouse assault, [and] rape." However, that criminal conviction was actually criminal sexual misconduct in the third degree with a woman who was not his spouse. During cross-examination, in order to correct the defendant's statement, the State elicited a few details of that criminal conviction. Over objections by defense counsel, the trial court permitted the State to proceed with its line of questioning because Defendant "injected the issue" by contending the victim was related to him, when, in fact, the victim was unrelated.

Second, Defendant argues the State used his prior criminal convictions as propensity evidence during the second stage of closing argument. During Defendant's closing argument, defense counsel attempted to explain Defendant's prior criminal convictions:

> Which brings us now to Johnnie Moore's testimony. So one of the instructions

has to do with considering his prior convictions and he's got a slew of them. There's no question about it. I'm not going to minimize that.

> What do you consider them for? You have to use them to figure out whether he's lying here today. Is someone with those crimes also going to lie on the stand? That's the issue. Those crimes were over 20 years ago. Twenty-five years ago I think was the most recent conviction. So you have to ask yourself is he telling the truth today 25 years from the last conviction.

In order to counter this argument, the State responded in its rebuttal closing argument by supplying the jury with an oral timeline of Defendant's prior criminal convictions:

> He [defense counsel] also wants you to talk about or to think about the fact that the defendant, his most recent conviction was 1987. Okay. Well, let's talk about the timeline of these convictions that you can consider for his credibility.

> Cook County, Illinois, rape, deviate sexual assault, aggravated kidnapping, rape, aggravated kidnapping, robbery and indecent liberties with a child. He pled guilty in February of 1976 and got four to ten years.

> In 1979, not three years later, he pled guilty in Detroit, Michigan to criminal sexual misconduct third degree. Then what was going on in his world? Then he ends up in St. Louis. And now we've got his DNA on two young rape victims from 1985, July and October.

> Then we have the defendant being found guilty of robbery in the first degree at a trial in 1986, and then pleading guilty to another robbery first degree. Yeah, that was his last conviction. His most recent one. Where has he been?

### Standard of Review

 It is undisputed Defendant failed to preserve his second point for appeal as it was not included in his motion for new trial. *State v. Tindle,* 395 S.W.3d 56, 62 (Mo.App.S.D.2013) ("if the conviction resulted from a jury trial, the objection must also have been preserved by including it in a motion for new trial").

This Court has the authority and the discretion to review "plain errors affecting substantial rights" if this Court determines "manifest injustice or miscarriage of justice has resulted therefrom." Rule 30.20. Plain error is error that is "evident, obvious and clear" and is dictated upon the facts and circumstances of each case. *State v. White,* 247 S.W.3d 557, 561 (Mo. App.E.D.2007); *State v. Mayes,* 281 S.W.3d 918, 921 (Mo.App.S.D.2009). "Plain error review requires that the alleged error have a *decisive effect* on the jury's determination." *State v. Wrice,* 389 S.W.3d 738, 742 (Mo.App.E.D.2013) (emphasis added); *see also State v. Edwards,* 365 S.W.3d 240, 251 (Mo.App.W.D.2012) (decisive effect is found if there is a reasonable probability the verdict would have been different but for the alleged error). Plain error should be used sparingly and "is no panacea which a criminal defendant can use to obtain appellate review of any alleged error that is unpreserved." *State v. Campbell,* 122 S.W.3d 736, 739 (Mo.App. S.D.2004).

A two-step analysis is triggered upon a request for plain error review. *White,* 247 S.W.3d at 561. First, this Court examines the record to determine whether or not the appellant's claim is one that, on its face, establishes substantial grounds for believing that a manifest injustice has occurred. *State v. D.W.N.,* 290 S.W.3d 814, 817 (Mo. App.W.D.2009); *White,* 247 S.W.3d at 561; *see also State v. Muhammad,* 334 S.W.3d 164, 166 (Mo.App.E.D.2011) ("First, we de-

termine whether the trial court committed plain error, which is error that is evident, obvious, and clear."). If we so conclude, this Court is thereby afforded the discretion to determine if the claimed error actually resulted in manifest injustice or a miscarriage of justice. *State v. Smith,* 370 S.W.3d 891, 896 (Mo.App.E.D.2012) (quoting *State v. Beck,* 167 S.W.3d 767, 778–79 (Mo.App.W.D.2005)). This burden of proving the existence of a manifest or miscarriage of justice belongs to the appellant. *Campbell,* 122 S.W.3d at 740; *see also State v. Comte,* 141 S.W.3d 89, 94 (Mo.App. S.D.2004) ("Asserting plain error places a much greater burden on a defendant than asserting prejudicial error.").

### Analysis

 This Court, under its discretionary powers afforded by Rule 30.20, declines to grant plain error review of Defendant's second point on appeal. Under the facts and circumstances of this case, Defendant has failed to demonstrate the admission of the contested evidence amounted to a manifest or miscarriage of justice "in the face of extensive evidence of his guilt". *State v. Mead,* 105 S.W.3d 552, 557 (Mo.App.W.D.2003). The introduction of certain details of Defendant's prior crimes, when taken in context, did not have a decisive effect on the jury. *See, e.g., White,* 247 S.W.3d at 564.

We decline to review and hereby deny Point II.

### III. CONCLUSION

For the foregoing reasons, the trial court's judgment is affirmed.

CLIFFORD H. AHRENS and GLENN A. NORTON, JJ., concur.