

# In the Missouri Court of Appeals
# Eastern District

<u>DIVISION FOUR</u>

| | | |
|---|---|---|
| THOMAS A. MCDANIEL, | ) | No. ED100204 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of Jefferson County |
| vs. | ) | 10JE-CC00706 |
| | ) | |
| STATE OF MISSOURI, | ) | Honorable Gary P. Kramer |
| | ) | |
| Respondent. | ) | Filed: December 23, 2014 |

Thomas A. McDaniel ("Movant") appeals the judgment denying his Rule 29.15[1] motion

for post-conviction relief following an evidentiary hearing. We affirm.

## I.     BACKGROUND

On September 14, 2006, Movant was charged by information with one count of first-

degree statutory sodomy. The information alleged that between December 1, 2005 and

December 31, 2005, Movant had deviate sexual intercourse with the victim ("Victim"), who was

less than twelve years old, by touching Victim's penis with his hand.

## A.     The Evidence Adduced at Trial

The following evidence was adduced at Movant's jury trial.

Movant's family and Victim's family were neighbors. Victim was friends with Movant's

---

[1] All references to Rules are to Missouri Supreme Court Rules (2014).

son Evan,[2] and the children would spend a lot of time at each other's homes and have sleepovers.

On December 26, 2005, Victim, who was nine years old at the time, spent the night at Movant's home to celebrate Evan's birthday. Victim testified at trial that on that date, Movant lay down next to Victim with his head near Victim's ribs, and Movant then put his hand down Victim's pants and touched Victim's penis with his hand.

When Victim returned home on the morning after the incident, he appeared sad, quiet, and withdrawn, and he told his mother he did not want to go back to Movant's house. Victim's mother tried to find out what was wrong, but Victim said he did not want to talk about what had happened. Additionally, when asked at trial how he felt on the day after the incident, Victim testified, "[n]ot too good."

For the next few months after the December 26 incident, Victim would play with Evan and Evan's brother Drew at Victim's house, but Victim refused to go to Movant's house. During this time, Movant began to repeatedly call Victim's parents about Victim's unwillingness to play with Evan at Movant's house. In one of the conversations, Movant told Victim's parents that, as part of a lie detector test Movant had taken as part of an issue involving a real estate commission, Movant had the examiner ask him questions about Victim to prove to Victim's parents that Movant "wasn't messing around with [Victim]" and "wasn't touching [Victim]." At the time Movant made that statement to Victim's parents, nobody had yet accused Movant of doing anything inappropriate with Victim.

After Movant's statement to Victim's parents about the lie detector test, Victim's parents asked Victim if everything was okay between him and Movant. Victim then told his parents that Movant had pulled Victim's shorts to the side and touched Victim's penis with his hand.

---

[2] Because Movant's relatives share the same last name, we will refer to them by their relationship to Movant and/or by their first names.

Victim's parents contacted the police about Victim's allegation, and Movant was subsequently arrested. Movant was then charged with committing one count of first-degree statutory sodomy.

At trial, Movant's counsel called Movant's son Evan and Movant's wife Joyce to testify, and both witnesses denied ever seeing Movant touch Victim's penis or put his hands in Victim's pants. Movant's counsel briefly called Evan's brother Drew as a witness, but counsel withdrew him as witness after he was non-responsive and the court had concerns with his competency.

## B. Relevant Procedural Posture

After hearing the evidence at trial, the jury found Movant guilty of first-degree statutory sodomy. The jury recommended a sentence of five years of imprisonment, and the trial court sentenced Movant in accordance with the jury's recommendation. Movant filed a direct appeal, and this Court affirmed his conviction and sentence in *State v. McDaniel*, 307 S.W.3d 653 (Mo. App. E.D. 2010).

### 1. Movant's Rule 29.15 Motion and the Evidentiary Hearing

Movant subsequently filed a pro se Rule 29.15 motion for post-conviction relief. The motion court appointed post-conviction counsel for Movant, and an amended Rule 29.15 motion was filed alleging the following six claims which are relevant to this appeal. First, Movant's Rule 29.15 motion alleges a claim of prosecutorial misconduct pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), on the basis that the State failed to disclose "crucial impeachment evidence." Second, the post-conviction motion asserts counsel was ineffective for failing to adequately investigate the existence of recordings of interviews of Victim from the Children's Advocacy Center ("CAC"). Third, Movant's Rule 29.15 motion alleges trial counsel was ineffective for failing to call an expert witness to testify regarding techniques for interviewing children. Fourth,

the Rule 29.15 motion asserts trial counsel was ineffective for failing to adequately prepare

Movant's son Drew to testify. Fifth, the post-conviction motion alleges trial counsel was

ineffective for failing to call Movant's son Jason as a witness. And finally, Movant's Rule 29.15

motion alleges trial counsel was ineffective for failing to preserve tape-recorded evidence of a

threatening message left on Movant's answering machine by Victim's parents.

On March 29, 2013, the motion court held an evidentiary hearing on Movant's Rule

29.15 motion where several individuals testified[3] including Movant, Movant's wife, and

Movant's two sons, Drew and Jason. Other witnesses at the hearing included Dr. Ann Dell

Duncan, a clinical psychologist, and Daris Almond, Movant's defense attorney prior to trial.

Phil Eisenhauer and Melinda Gorman, Movant's defense attorneys prior to and during trial, also

testified at the hearing.

In addition, Exhibit A, part of the discovery provided to Movant's trial counsel by the

State prior to trial, was discussed at the evidentiary hearing. The exhibit is also part of the record

on appeal and is relied on by both parties on appeal. Exhibit A is a thirty-four page "forensic

evaluation summary/report" prepared by evaluator Michele Mechlin at the CAC. Exhibit A

states Ms. Mechlin had one interview session with Victim's mother and one interview session

with Victim's father. The exhibit also states that Ms. Mechlin interviewed Victim at the CAC in

five separate sessions held on March 24, 2006, March 27, 2006, March 30, 2006, April 4, 2006,

and April 5, 2006. Exhibit A consists of, (1) identifying information detailing the date of the

report, Victim's name, date of birth, and a summary of the seven interview sessions conducted

by Ms. Mechlin; (2) a "presenting problem" section indicating why Victim was being evaluated

at the CAC; (3) Ms. Mechlin's summary of Victim's developmental history based upon Ms.

---

[3] Specific portions of the individuals' testimony will be set forth in relevant part in Section II.C of this opinion.

Mechlin's sessions with Victim's parents; (4) a "disclosure summary" containing Ms. Mechlin's summary of Victim's parents' report and Victim's report of the December 2005 incident between Movant and Victim; (5) transcribed portions of Ms. Mechlin's March 30, 2006 and April 4, 2006 interview sessions with Victim[4]; (6) a "behavioral checklist" section summarizing the results of evaluation forms and reports prepared by Victim, Victim's parents, and Victim's teachers; and (7) Ms. Mechlin's summary and recommendations.

## 2. Events Occurring After the Evidentiary Hearing

On April 18, 2013, after the evidentiary hearing on Movant's Rule 29.15 motion took place, the State disclosed documents to Movant's post-conviction counsel which related to Ms. Mechlin's interviews at the CAC.[5] These documents consist of, (1) what appears to be complete transcripts of three interviews Ms. Mechlin had with Victim on March 30, 2006, April 4, 2006, and April 5, 2006; and (2) ninety-three pages of additional records relating to Ms. Mechlin's evaluation of Victim which include evaluation forms and reports completed by Victim's parents and teachers as well as Ms. Mechlin's progress notes from various interviews.[6] It is undisputed those documents were not disclosed to defense counsel prior to trial.

Subsequently, Movant's post-conviction counsel requested additional time to supplement the record, and the motion court granted Movant's request. On May 29, 2013, post-conviction counsel informed the motion court of the transcripts of Ms. Mechlin's interviews and ninety-

---

[4] We note that Movant's brief states that "[Exhibit A] contained 19 pages of what was clearly a transcript," thereby conceding this part of Exhibit A was in fact transcribed portions of the two interview sessions.

[5] It is unclear from the record how these records were eventually uncovered by the State. According to Movant's brief, Movant's post-conviction counsel sent a subpoena to the CAC and the prosecuting attorney's office for this evidence, post-conviction counsel spoke with Ms. Mechlin in an effort to confirm the evidence existed, and the records were given to counsel by the State after counsel scheduled a phone deposition with Ms. Mechlin.

[6] Movant alleges the records consisted of DVD's of three interviews, transcripts of those three interviews, and ninety-three pages of additional records relating to Ms. Mechlin's evaluation of Victim. However, it is unclear from the record whether the DVD's were submitted to and received by the trial court, and the DVD's have not been submitted as part of the record on appeal. The only portions of the records which have been made a part of the record on appeal are the transcripts of the three interviews and ninety-three pages of additional records relating to Ms. Mechlin's evaluation of Victim.

5

three pages of additional records and submitted the documents to the court. Counsel's letter stated, "[i]t is my position . . . the[ ] documents can and should be made part of the record without a further hearing."

On June 10, 2013, the motion court entered a judgment denying all of Movant's post-conviction relief claims set forth in his Rule 29.15 motion, noting that the court considered the documents submitted by Movant's counsel on May 29, 2013.[7] This appeal followed.

## II.    DISCUSSION

Movant raises seven points on appeal, each of which contends the motion court erred in denying his Rule 29.15 motion for post-conviction relief. Movant's first point on appeal argues the motion court erred in denying his claim of prosecutorial misconduct. Movant's second, third, fourth, fifth, and sixth points on appeal assert the motion court erred in denying his various ineffective assistance of counsel claims. Finally, Movant's seventh point on appeal maintains the motion court erred in failing to find cumulative error with respect to Movant's ineffective assistance of counsel claims.

### A.    Standard of Review

Our Court reviews the denial of a Rule 29.15 motion for post-conviction relief only to determine if the findings of fact and conclusions of law of the motion court are clearly erroneous. Rule 29.15(k); *McCoy v. State*, 431 S.W.3d 517, 520 (Mo. App. E.D. 2014). Findings and conclusions are clearly erroneous if, after a review of the entire record, we are left with the definite and firm impression that a mistake has been made. *McCoy*, 431 S.W.3d at 520. This Court presumes that the motion court's findings are correct. *Id*.

---

[7] The motion court's specific findings and conclusions will be set forth in relevant part in Sections II.B and II.C of this opinion.

6

**B.      Movant's Prosecutorial Misconduct Claim**

In his first point on appeal, Movant asserts the motion court erred in denying his prosecutorial misconduct claim.  Movant asserts the State violated *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to timely disclose portions of transcripts of Ms. Mechlin's interviews with Victim and portions of the additional records relating to Ms. Mechlin's evaluation of Victim.  It is undisputed that these specific documents were not disclosed to defense counsel prior to trial.

Pursuant to *Brady*, due process is violated where the State suppresses evidence favorable to the accused that is material with respect to either guilt or punishment.  *Barton v. State*, 432 S.W.3d 741, 761 (Mo. banc 2014).  In order to make a successful *Brady* claim, the defendant has the burden to show, (1) the evidence at issue is favorable to the defendant, either because it is exculpatory or impeaching; (2) the evidence was suppressed by the State, either willfully or inadvertently; and (3) the defendant was prejudiced as a result of the suppression of the evidence, i.e., that the evidence is material.  *Id.*; *See State v. Reed*, 334 S.W.3d 619, 626 (Mo. App. E.D. 2011) (holding that the defendant has the burden to prove elements of a *Brady* claim).  Evidence is considered material if:

> there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.  The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence.  The materiality inquiry is not simply a matter of whether, after discounting the inculpatory evidence, there remains sufficient evidence to support the conviction.  Rather, the question is whether the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.

*Barton*, 432 S.W.3d at 761 (quoting *Strickler v. Greene*, 527 U.S. 263, 280, 289-90 (1999))

(internal citations and quotations omitted).

7

In his appellant's brief, Movant cites to specific portions of the transcripts of Ms. Mechlin's interviews with Victim and specific portions of the additional records relating to Ms. Mechlin's evaluation of Victim which Movant claims give rise to a *Brady* violation. Because it is Movant's burden to prove a *Brady* violation exists, we will determine only whether those specifically-cited portions of evidence violate *Brady*.

### 1. Portions of the Transcripts

Movant cites to five different portions of the transcripts which were not disclosed to defense counsel until after trial, four portions of Ms. Mechlin's March 30, 2006 interview with Victim and one portion of Ms. Mechlin's April 4, 2006 interview with Victim:

[Ms. Mechlin]: And you told me that at that first house um, that you lived at[,] that that's where [Movant] started touching you?

[Victim]: I mean the second house.

[Ms. Mechlin]: Was it the second house?

[Victim]: No the third house. Third house.[8]

. . .

[Ms. Mechlin]: That's the what happened card.

[Victim]: Mmm, I don't really remember. All I remember is um, him touching me. That's all.[9]

. . .

[Ms. Mechlin]: Okay. When's the next time you remember something happening?

[Victim]: I don't remember.

---

[8] Although this is the complete portion of the transcript cited by Movant, we note that in the next part of this transcript and other portions of the record, Victim explains that Movant started touching Victim in the third house he lived in throughout the course of his life, but the first house in the city where he was neighbors with Movant.
[9] Although this is the complete portion of the transcript cited by Movant, we note that in the next part of this transcript, Victim indicates he remembers Movant touching him on his "private spot."

. . .

| | |
|---|---|
| [Ms. Mechlin]: | Um, what's the – what's the next time that you do remember something happening? |
| [Victim]: | With [Movant]? |

. . .

| | |
|---|---|
| [Victim]: | Um, well when [Movant] kept on complaining that I didn't go there anymore so my parents asked if [Movant] touched me. I said yeah he touched me in the private spot. |

Movant claims those portions of the transcripts are favorable to Movant because they reveal significant inconsistences in Victim's various statements and give clues as to possible motivations for Victim making false allegations. Even assuming *arguendo* that is true, Movant's *Brady* claim with respect to the specific portions of Victim's interviews set out above has no merit because each portion is also found in Exhibit A, which was provided to Movant's trial counsel by the State prior to trial. As explained in footnote 4 of Section I.B.1, it is undisputed that Exhibit A included transcribed portions of Ms. Mechlin's March 30, 2006 and April 4, 2006 interview sessions with Victim. Because the specific portions of Victim's interviews were available to Movant from another source, Exhibit A, and therefore Movant knew about Victim's pertinent statements to Ms. Mechlin at the time of trial, no *Brady* violation has occurred with respect to the portions of the transcripts relied upon by Movant. *See State v. Moore*, 411 S.W.3d 848, 855 (Mo. App. E.D. 2013) ("there can be no *Brady* violation where the defendant knew . . . of the material or where the information was available to the defendant from another source"); *See also State v. Calvert*, 879 S.W.2d 546, 548 (Mo. App. W.D. 1994) ("the state cannot be faulted for nondisclosure if the defendant had knowledge of the evidence at the time of trial").

### 2. Portions of the Additional Records

Movant also claims a *Brady* violation occurred because portions of additional records relating to Ms. Mechlin's evaluation of Victim, specifically evaluation forms and reports completed by Victim's parents and teachers, were not disclosed to defense counsel until after trial. These records indicate, (1) Victim had a speech problem with respect to "understanding of language"; (2) Victim had an educational diagnosis of a language disorder, his written language skills and handwriting were "poor," and Victim was in language therapy; and (3) Victim's special education teacher had concerns about Victim's "vocabulary skills" and him "expressing himself." Movant alleges the records also indicate that Victim did not have any signs of a psychological disturbance.

Assuming for purposes of this appeal that Movant has met his burden of proving that the evidence in the additional records is favorable to Movant because it is impeaching and that the evidence was suppressed by the State through its agent Ms. Mechlin, we must determine whether Movant has met his burden of proving the third element of *Brady*, i.e., that the evidence is material.

### a. Movant's Arguments and Relevant Evidence Adduced at Trial

Movant contends the evidence regarding Victim's language problems is material because it reveals Victim had significant learning and language disabilities, which would have demonstrated to defense counsel and the jury that "sophisticated words" used by Victim at trial were a result of Victim being coached. Movant further contends the alleged absence of Victim having documented signs of a psychological disturbance in Ms. Mechlin's records is material because it suggests that any alleged sexual abuse was not disturbing to Victim.

In this case, the only "sophisticated word" Movant claims Victim used at trial which allegedly suggests Victim was coached is the word "sexually." A review of the record demonstrates that this word was only used once by Victim in over ninety pages of his testimony. The record further reveals that in other parts of Victim's testimony he used what we find are "non-sophisticated" terms such as "private spot," "nuts," and "weiner."

Additionally, despite the alleged absence of Victim having documented signs of a psychological disturbance when Ms. Mechlin was doing her evaluation of Victim in March and April 2006, there was evidence adduced at trial that Victim was affected immediately after the December 2005 incident. When asked at trial how he felt on the day after the incident, Victim testified "[n]ot too good." And Victim's mother testified that when Victim returned home on the morning after the incident, he appeared sad, quiet, and withdrawn, and when she tried to find out what was wrong, Victim said he did not want to talk about what had happened.

### b. Whether Portions of the Additional Records Were Material

In light of the evidence adduced at trial, including that which is set out immediately above, we find the evidence of Victim's learning and language disabilities and the alleged absence of Victim having documented signs of a psychological disturbance in Ms. Mechlin's records would not have led the jury to a different assessment of Victim's credibility. *Cf. Ferguson v. Dormire*, 413 S.W.3d 40, 63-64 (Mo. App. W.D. 2013) (finding evidence was material under *Brady* where it "could have led the jury to a different assessment of [a significant prosecution witness's] credibility") (quotation omitted). Nor would the evidence have weakened the State's case significantly and strengthened the defense's case. *Cf. State ex rel. Koster v. Green*, 388 S.W.3d 603, 632-33 (Mo. App. W.D. 2012) (upholding habeas court's finding that

11

evidence was material under *Brady* where "its disclosure would have weakened the State's case significantly and strengthened the defense's case").

We find there is no reasonable probability that, had the evidence of Victim's learning and language disabilities and the alleged absence of Victim having documented signs of a psychological disturbance in Ms. Mechlin's records been disclosed to the defense, the result of the proceeding would have been different. Moreover, we find the evidence could not reasonably be taken to put the whole case in such a different light as to undermine confidence in jury's verdict convicting Movant of first-degree statutory sodomy. Therefore, Movant has not met his burden of demonstrating that the portions of the additional records relating to Ms. Mechlin's evaluation of Victim are material under *Brady*.

### 3. Conclusion as to Movant's Prosecutorial Misconduct Claim

Based on the foregoing, Movant has not met his burden of demonstrating that a *Brady* violation occurred. Therefore, the motion court did not clearly err in denying Movant's *Brady* claim. Point one is denied.

### C. Movant's Ineffective Assistance of Counsel Claims

Movant's second, third, fourth, fifth, and sixth points on appeal assert the motion court erred in denying his various ineffective assistance of counsel claims, and Movant's seventh point maintains the motion court erred in failing to find cumulative error with respect to those claims. In his second point on appeal, Movant asserts counsel was ineffective for failing to adequately investigate the existence of recordings of Victim's interviews with Ms. Mechlin at the CAC. Movant's third point on appeal contends counsel was ineffective for failing to call an expert witness such as Dr. Ann Dell Duncan to testify regarding techniques for interviewing children. Movant's fourth point on appeal argues counsel was ineffective for failing to adequately prepare

12

Movant's son Drew to testify. Movant's fifth point argues trial counsel was ineffective for failing to call Movant's son Jason as a witness. And in Movant's sixth point on appeal, Movant asserts trial counsel was ineffective for failing to preserve tape-recorded evidence of a threatening message left on Movant's answering machine on March 7, 2006 by Victim's parents. For the reasons set out below, we find the motion court did not clearly err in denying each of those ineffective assistance of counsel claims, and we also find the motion court did not clearly err in failing to find cumulative error with respect to the claims.

Courts apply the two-prong *Strickland* test in cases where a movant claims post-conviction relief based upon ineffective assistance of trial counsel. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Zink v. State*, 278 S.W.3d 170, 175-76 (Mo. banc 2009). Under that test, a movant must demonstrate that, (1) counsel's performance did not conform to the degree of skill and diligence of a reasonably competent attorney; and (2) as a result, the movant was prejudiced. *Zink*, 278 S.W.3d at 175. The movant must overcome a strong presumption that counsel's performance was reasonable and effective to meet the first prong of the test. *Id*. at 176. To satisfy the second prong, the movant must show there is a reasonable probability that, but for counsel's alleged errors, the outcome of the proceedings would have been different. *Id*. Moreover, a movant must prove his claims for relief by a preponderance of the evidence. Rule 29.15(i).

### 1. Counsel's Alleged Failure to Adequately Investigate Recordings of Victim's Interviews

In Movant's second point on appeal, he asserts the motion court clearly erred in denying his claim that trial counsel was ineffective for failing to adequately investigate the existence of recordings of Victim's interviews with Ms. Mechlin at the CAC. We disagree.

13

In order to succeed on a claim that trial counsel was ineffective for failing to investigate, a movant must show that, (1) "counsel's failure to investigate was unreasonable"; and (2) as a result, the movant was prejudiced. *Barton*, 432 S.W.3d at 759. "The duty to investigate does not force defense lawyers to scour the globe on the off-chance something will turn up; reasonably diligent counsel may draw a line when they have good reason to think further investigation would be a waste." *Johnson v. State*, 388 S.W.3d 159, 165 (Mo. banc 2012) (quotation omitted).

In this case, Melinda Gorman, one of Movant's attorneys prior to and during trial, testified to the following at the evidentiary hearing. During Ms. Gorman's representation of Movant, she reviewed Exhibit A and believed some portions of the exhibit were transcripts of Victim's interviews with Ms. Mechlin. Accordingly, Ms. Gorman contacted the prosecuting attorney and CAC and asked if recordings of Victim's interviews existed. The prosecutor's office told Ms. Gorman that the State had turned over everything they had from the CAC and that the recordings did not exist. The CAC also told Ms. Gorman the recordings did not exist. Based upon the representations by the prosecutor's office and the CAC, Ms. Gorman believed that no recordings of Victim's interviews existed and she did not further investigate their existence.

Movant has failed to show that Ms. Gorman's investigation was unreasonable. Movant claims Ms. Gorman should have done more to investigate the existence of the recordings of Victim's interviews, such as pursuing a subpoena or discovery motion. However, Movant does not cite to any controlling authority, and we can find none, to support the proposition that trial counsel will be found ineffective to further investigate the existence of evidence when both the State and the agency responsible for creating the evidence affirmatively tells counsel the evidence does not exist. We hold it was reasonable for Ms. Gorman to decide not to further

14

investigate the existence of the recordings after being told by the State and CAC that no recordings existed. Therefore, the motion court did not clearly err in denying Movant's claim that trial counsel was ineffective for failing to adequately investigate the existence of the recordings. Point two is denied.

### 2. Counsel's Failure to Call an Expert Witness

In Movant's third point on appeal, he contends the motion court clearly erred in denying his claim that his trial counsel was ineffective for failing to call an expert witness such as Dr. Ann Dell Duncan to testify regarding techniques for interviewing children. Dr. Duncan testified at the evidentiary hearing that she reviewed the documentation of the interviews of Victim and found that many of the interviewer's questions were inappropriate and that the substance of interviews indicated Victim was systematically interviewed too many times.

In order to succeed on a claim of ineffective assistance of trial counsel for failure to call a witness, a movant must show that, (1) counsel knew or should have known about the existence of the witness; (2) the witness could have been located through a reasonable investigation; (3) the witness would have testified at trial; and (4) the witness's testimony would have provided movant with a viable defense. *McIntosh v. State*, 413 S.W.3d 320, 328 (Mo. banc 2013). Even if a movant proves those elements, counsel's decision not to call a witness is presumptively a matter of trial strategy and ordinarily will not support a claim of ineffective assistance of counsel. *Barton*, 432 S.W.3d at 757; *Worthington v. State*, 166 S.W.3d 566, 577 (Mo. banc 2005). Moreover, "[i]t is not ineffective assistance of counsel to pursue one reasonable trial strategy to the exclusion of another reasonable trial strategy." *Anderson v. State*, 196 S.W.3d 28, 33 (Mo. banc 2006)

In this case, Phil Eisenhauer, one of Movant's attorneys prior to and during trial, testified at the evidentiary hearing that he was aware of scholarship indicating that multiple interviews of a child witness can taint the reliability of a child's statements. He also testified he considered hiring an expert witness in this case, but determined instead that his trial strategy would be to keep the case simple and focus on the alleged ridiculousness of Victim's testimony, because Mr. Eisenhauer believed Victim's testimony was not credible. Mr. Eisenhauer said his strategy was to force the State to prove its case beyond a reasonable doubt by calling into question the credibility of Victim's testimony. Mr. Eisenhauer further stated he decided not to impeach Victim with any inconsistencies in his statements to interviewers because he did not want to open the door to the State admitting the full records of Victim's statements where he repeatedly accused Movant of touching him inappropriately.

The motion court found that "[u]sing an expert such as [Dr. Duncan] would be a reasonable theory of defense or strategy[,] [b]ut the theory or strategy chosen by [t]rial [c]ounsel was also reasonable." The court also found that, "If one reviews [t]rial [c]ounsel's closing argument, you will see that, like his questioning and cross-examination of the witnesses, [t]rial [c]ounsel remained focused on the [ ] Victim's incredible story that the jury should not find reasonable or credible." The motion court concluded it "cannot say that retaining an expert such as [Dr. Duncan] would have been a more effective strategy than that chosen by [t]rial [c]ounsel."

The motion court's finding and conclusion are not clearly erroneous. It was not ineffective assistance of counsel for Mr. Eisenhauer to pursue one reasonable trial strategy to the exclusion of another reasonable trial strategy. *See id*. Therefore, the motion court did not clearly err in denying Movant's claim that trial counsel was ineffective for failing to call an expert witness. Point three is denied.

16

**3.     Counsel's Alleged Failure to Adequately Prepare Movant's Son Drew to Testify**

In his fourth point on appeal, Movant claims the motion court clearly erred in denying his claim that trial counsel was ineffective for failing to adequately prepare Movant's son Drew to testify. Movant argues that "Counsel Eisenhauer assigned [Ms. Gorman,] an attorney with no previous experience preparing child witnesses[,] to conduct this delicate task." Movant also argues that Ms. Gorman's preparation of Drew was insufficient and prejudiced Movant because Drew would have testified he did not see Movant inappropriately touch Victim.

At trial, Movant's trial counsel, Ms. Gorman, briefly called Drew as a witness, but she withdrew him as a witness after he was non-responsive and the court had some concerns with his competency:

| | |
|---|---|
| [Ms. Gorman]: | Do you know what it means to tell a lie? |
| [Drew]: | (Nodding). |
| [Ms. Gorman]: | You have to say your answer out loud. |
| [Drew]: | Yes. |
| [Ms. Gorman]: | What does it mean to tell a lie? |
| [Drew]: | If something happens and then someone – and then the person tells a different person a thing that didn't happen. |
| [Ms. Gorman]: | Okay. So – so is a lie different than the truth? |
| [Drew]: | Yes. |
| [Ms. Gorman]: | Okay. Do you understand what it means to promise to tell the truth? |
| [Drew]: | (No response). |
| [Ms. Gorman]: | Do you want me to ask you again? |
| [Drew]: | (Nodding yes). |

17

| | |
|---|---|
| [Ms. Gorman]: | Do you know what it means to make a promise to tell the truth? |
| [Drew]: | No. |
| [Ms. Gorman]: | Did you – |
| THE COURT: | May I see counsel at side bar, please? |

AT THE BENCH:

| | |
|---|---|
| THE COURT: | I will let you try again, but you got a real problem establishing the competency of this witness to testify. |
| [Ms. Gorman]: | Judge, we are just going to withdraw this witness. |

At the evidentiary hearing, multiple witnesses testified about Drew being called a witness at trial. Ms. Gorman testified at the hearing that she met with Drew in a conference room at the courthouse prior to trial and attempted to prepare him for trial by going over his possible testimony, by asking him the questions she intended to ask on the stand, and by preparing him for cross-examination. Ms. Gorman stated that Drew was "a lot less comfortable in the courtroom than he was in the conference room," and she made the decision to withdraw him as a witness after he was non-responsive and could not answer if he knew what it meant to make a promise to tell the truth.

Movant testified at the evidentiary hearing that prior to trial he talked with Drew about testifying and Drew was afraid to testify. Additionally, Drew's mother, Joyce, testified at the hearing that she was present when both Mr. Eisenhauer and Ms. Gorman spoke with Drew about testifying. Joyce testified Mr. Eisenhauer met with Drew separately and spoke with him for a few minutes. Joyce also testified that Ms. Gorman spoke with Drew before he took the stand and asked Drew if he knew the difference between the truth and a lie and whether he would be able to tell the truth about Movant. Joyce stated Drew understood the difference between the truth

18

and a lie.  Joyce also stated that Ms. Gorman did not ask Drew prior to trial whether he knew what it meant to promise to tell the truth.  On cross-examination, Joyce testified that Drew was very scared about the whole process of testifying and that he did not want to testify at first but decided to shortly before trial.

Drew testified at the evidentiary hearing that if he would have been able to testify at trial, he would have testified he never saw Movant touch Victim in his "private parts."  Drew stated that he remembered Ms. Gorman talked to him about the difference between a truth and a lie before he was called to testify.  Drew testified that when he got on the stand at trial, he understood the first question, but when Ms. Gorman asked him a different question, she mixed up the words and that confused him.

The motion court denied Movant's claim that trial counsel was ineffective for failing to adequately prepare Movant's son Drew to testify.  In its judgment, the court noted that both Movant and his wife Joyce testified at the evidentiary hearing that Drew, who was eight years old at the time of trial, was nervous and scared about testifying.  The motion court also noted Ms. Gorman's testimony indicating she spent time with Drew to prepare him for trial.  Additionally, the motion court made detailed findings of its recollection of the presentation of Drew as a witness at trial and concluded trial counsel was not ineffective:

> My recollection, as [t]rial [j]udge, . . . which the [ ] quoted portion of the trial transcript cannot reflect, is that [Drew] was fidgeting, nervous, with long pauses before answering, and he appeared scared.  He was looking down and not making eye contact with anyone . . ..

> In this [c]ourt's experience, young children often exhibit those behaviors in a courtroom.  Some children can get through the experience of testifying in a courtroom setting, and some cannot.  At the time, it was obvious that Drew [ ] was one of the latter.  It is difficult to see what more could have been done by [t]rial [c]ounsel to 'prepare' this young child.  As to the decision to withdraw the witness, that clearly was an exercise of sound trial strategy.  The [c]ourt finds no ineffective assistance of [t]rial [c]ounsel.

19

The motion court's findings and conclusions are not clearly erroneous. The motion court judge presided over Movant's trial and observed Drew's demeanor first-hand, and we defer to the judge's superior opportunity to have assessed Drew's demeanor during trial and defer to the court's findings regarding Drew's demeanor. *See Wills v. State*, 321 S.W.3d 375, 380 (Mo. App. W.D. 2010) (finding that a trial court is free to consider demeanor when determining competency); *Helmig v. State*, 42 S.W.3d 658, 683-84 (Mo. App. E.D. 2001) (holding "[w]e rely on th[e] judge's superior position to have assessed movant's demeanor during trial" where motion court judge presided over movant's trial and made findings regarding movant's demeanor during trial). Additionally, the motion court's conclusion that "[i]t is difficult to see what more could have been done by [t]rial [c]ounsel to 'prepare' this young child" indicates the motion court found Ms. Gorman to be a credible witness when she testified that she met with Drew and attempted to prepare him for trial, by, *inter alia*, going over his possible testimony and asking him the questions she intended to ask on the stand. *See Chacon v. State*, 409 S.W.3d 529, 532-33 n.5 (Mo. App. W.D. 2013) (even when a motion court does not make express credibility findings, the court's other findings can indicate the court's credibility determinations). We defer to the motion court's credibility determination. *Wills*, 321 S.W.3d at 380.

Based on the foregoing, Movant has not demonstrated that Ms. Gorman's performance in preparing Drew to testify did not conform to the degree of skill and diligence of a reasonably competent attorney. Additionally, to the extent Movant's point argues Mr. Eisenhauer was ineffective in allowing Ms. Gorman to prepare Drew to testify, this claim must also fail because it is dependent upon a finding that Ms. Gorman was ineffective. Therefore, the motion court did not clearly err in denying Movant's claim that trial counsel was ineffective for failing to adequately prepare Drew to testify. Point four is denied.

20

**4.     Counsel's Failure to Call Movant's son Jason as a Witness**

In Movant's fifth point on appeal, he asserts the motion court clearly erred in denying his claim that trial counsel was ineffective for failing to call Movant's son Jason as a witness. Movant claims Jason was available to testify at trial, would have been willing to testify, and would have testified that Victim's parents "attempted to bribe him to help build the case against his father."

Jason testified at the evidentiary hearing that Victim's parents approached him in April 2007 and asked him if there was anything they could do to get Jason to help them build a case against Movant. Jason also testified that he thought Victim's parents were trying to get him to lie about Movant.

Mr. Eisenhauer testified at the evidentiary hearing that he met with Jason at least once before trial and discussed his potential testimony with him. Mr. Eisenhauer also testified he decided not to call Jason as a witness because he did not think Jason's testimony would be credible. In addition, Mr. Eisenhauer stated that instead of trying to convince the jury that Jason was credible, he decided to adopt the trial strategy of keeping the case simple and focus on the alleged ridiculousness of Victim's testimony, because Mr. Eisenhauer believed Victim's testimony was not credible. Mr. Eisenhauer said his strategy was to force the State to prove its case beyond a reasonable doubt by calling into question the credibility of Victim's testimony.

As previously stated in Section II.C.2, in order to succeed on a claim of ineffective assistance of trial counsel for failure to call a witness, a movant must show that, (1) counsel knew or should have known about the existence of the witness; (2) the witness could have been located through a reasonable investigation; (3) the witness would have testified at trial; and (4) the witness's testimony would have provided movant with a viable defense. *McIntosh*, 413

21

S.W.3d at 328. Additionally, even if a movant proves those elements, counsel's decision not to call a witness is presumptively a matter of trial strategy and ordinarily will not support a claim of ineffective assistance of counsel. *Barton*, 432 S.W.3d at 757; *Worthington*, 166 S.W.3d at 577.

In this case, there was no showing that Mr. Eisenhauer's decision not to call Jason as a witness was anything but trial strategy. Mr. Eisenhauer testified he believed Jason would not be a credible witness, and as a matter of trial strategy, Mr. Eisenhauer decided not to call him to testify and instead focus on the alleged ridiculousness of Victim's testimony, because Mr. Eisenhauer believed Victim's testimony was not credible. Mr. Eisenhauer said his strategy was to force the State to prove its case beyond a reasonable doubt by calling into question the credibility of Victim's testimony. The motion court found Mr. Eisenhauer's strategy to be reasonable, and the motion court did not clearly err in making that finding. Under these circumstances, the motion court did not clearly err in denying Movant's claim that trial counsel was ineffective for failing to call Jason as a witness. *See Weekley v. State*, 164 S.W.3d 155, 158-59 (Mo. App. S.D. 2005) (holding motion court did not clearly err in finding trial counsel was not ineffective for failing to call a witness where counsel did not believe witness to be credible and did not call her to testify as a matter of trial strategy). Point five is denied.

### 5. Counsel's Alleged Failure to Preserve Tape-Recorded Evidence

In his sixth point on appeal, Movant asserts the motion court clearly erred in denying his claim that trial counsel was ineffective for failing to preserve tape-recorded evidence of a threatening message left on Movant's answering machine on March 7, 2006 by Victim's parents. Movant's Rule 29.15 motion alleges he gave the March 7, 2006 tape-recorded message to Daris Almond, his attorney prior to trial.

Movant's brief does not cite to any testimony at the evidentiary hearing which reflects that a tape-recorded message from March 7, 2006 existed. And based on our review of the record, we find the testimony at the hearing indicates that such a tape-recorded message did not exist.

Movant's testimony at the evidentiary hearing was as follows:

[The State]:        [H]ow many messages from [Victim's parents] was [sic] left on your [ ] phone?

[Movant]:           One was – one was on the 7th of March was [sic] on my home phone, and the one, the 18th of April, was on my cell phone.

[The State]:        And did you make copies of both those messages?

[Movant]:           I made a copy of the one on my cell phone. The one off my home phone apparently was deleted after a certain number of days.

                                        . . .

[The State]:        *So 4-18 is the one that you tape-recorded?*

[Movant]:           *Right.*

[The State]:        And that's on your cell phone?

[Movant]:           Correct.

[The State]:        *And that's the one you gave to Daris, allegedly?*

[Movant]:           *Yes.*

[The State]:        *And this message of 3-7* . . . is that on your home phone, or is that on your cell phone?

[Movant]:           My home phone.

[The State]:        And has anyone hear[d] that one?

[Movant]:           I heard it and then I played it back and had my wife listen to it.

23

| | |
|---|---|
| [The State]: | *Did you record that one?* |
| [Movant]: | *No . . ..* |

(emphasis added). Accordingly, Movant's testimony reflects that any alleged message left by Victim's parents on March 7, 2006 was not recorded. Movant's wife testimony at the evidentiary hearing also indicates that any message left by Victim's parents on March 7, 2006 was not recorded:

| | |
|---|---|
| [Post-conviction counsel]: | *I want to direct your attention to March of 2006 . . ..* |
| | *. . .* |
| [Post-conviction counsel]: | *Was there a day that you received a message from [Victim's parents] on your answering machine?* |
| [Movant's wife]: | *Yes.* |
| | *. . .* |
| [Post-conviction counsel]: | When you heard that message, what did you do? |
| [Movant's wife]: | Well, I saved it. I was very surprised at what I'd heard. But I saved it so I could play it for my husband. |
| [Post-conviction counsel]: | And after that, *what did you do with the message?* |
| [Movant's wife]: | *We erased it . . ..* |

(emphasis added).

In addition to Movant's testimony and Movant's wife's testimony, Daris Almond, Movant's counsel prior to trial and the attorney who Movant allegedly gave a March 7, 2006 recording to, also testified at the evidentiary hearing. Mr. Almond testified he did not receive a recording from Movant.

24

We find that Movant's testimony, Movant's Wife's testimony, and Mr. Almond's testimony reflects that no tape-recorded message from March 7, 2006 existed. Accordingly, Movant has failed to prove his claim that trial counsel was ineffective for failing to preserve such a recording by a preponderance of the evidence as is required by Rule 29.15(i). *See Triblett v. State*, 241 S.W.3d 856, 858 (Mo. App. S.D. 2007) ("[a]t the evidentiary hearing, it was [m]ovant's burden to prove his claim[ ] by a preponderance of the evidence"); Rule 29.15(i). Therefore, the motion court did not clearly err in denying Movant's claim. Point six is denied.

### 6. Alleged Cumulative Error

In his seventh and final point on appeal, Movant contends the motion court erred in failing to find cumulative error with respect to Movant's ineffective assistance of counsel claims raised in points two through six. However, "[n]umerous non-errors cannot add up to error." *State v. Gray*, 887 S.W.2d 369, 390 (Mo. banc 1994). Having determined that none of Movant's points amount to reversible error, there can be no reversible error attributable to their cumulative effect. *Id*. Point seven is denied.

### III. CONCLUSION

The judgment of the motion court denying Movant's Rule 29.15 motion for post-conviction relief is affirmed.

ROBERT M. CLAYTON III, JUDGE

Patricia L. Cohen, P.J., and
Roy L. Richter, J., concur.

25