

# In the Missouri Court of Appeals Eastern District

## DIVISION TWO

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | ED101709 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| v. | ) | 13SL-CR1396-01 |
| | ) | |
| JERMAINE C. PATE, | ) | Honorable Tom W. DePriest, Jr. |
| | ) | |
| Appellant. | ) | Filed: September 15, 2015 |

## Introduction

Jermaine Pate (Defendant) appeals the judgment entered upon his convictions for robbery in the first degree and armed criminal action. He argues the trial court should have dismissed the charges due to a violation of his constitutional right to a speedy trial, and alternatively that the trial court should have suppressed incriminating statements he made as fruit of being unlawfully held for more than 24 hours. Finally, he argues that there was insufficient evidence to prove that he committed the robbery with a dangerous instrument. We affirm.

## Background

Just after midnight on October 25, 2012, Ganesh KC (Victim) arrived at his apartment in University City. He parked his white Toyota Camry in the parking area

behind his apartment. As he got out of his car, two men, one of whom was Defendant, walked toward Victim and asked if he had jumper cables. Victim responded that he did not. Defendant asked if he could use Victim's cell phone, and Victim gave it to him. The other man was behind Victim, and at that point he held a knife to Victim's neck from behind. Defendant then pointed a gun at Victim and demanded Victim's car keys. Victim gave them to Defendant, and the two men got into Victim's car, in which Victim also had a laptop and some sports equipment, and drove away.

Victim contacted the police, and when they arrived, Victim gave them a description of the two men as well as the items stolen. Victim's cell phone was equipped with a program that could be used to locate the phone, which police did. They tracked the phone to a retail store, where an employee gave them the name of a customer who had brought the phone into the store to be unlocked. The police eventually traced the phone to Darnesha Nunn (Nunn). Nunn said Defendant had given her the phone and a laptop and asked her to sell them, which she did. At the time, she did not know they were stolen. Police showed Nunn surveillance photos from the area of the robbery taken near the time of the robbery, and Nunn identified Defendant and Tim Valley (Valley) as the two men pictured.

Detective Jesse Meinhardt created two separate photographic lineups containing pictures of Defendant and Valley and showed them to Victim. Victim identified Defendant as the man who had pointed a gun at him, and Valley as the man with the knife. Detective Meinhardt then put out a "wanted" for Defendant and Valley, which alerted other police officers that they could arrest Defendant, but was different than an arrest warrant because it had not been signed by a judge who had verified probable cause.

2

On February 12, 2013, Cuba, Missouri police officers arrested Defendant. They transported Defendant to University City, Missouri, where Detective Meinhardt met with him the next day, February 13, 2013. After advising Defendant of his Miranda[1] rights, Detective Meinhardt took a statement from Defendant, who maintained he did not do anything.

Detective Meinhardt then obtained warrants for Defendant's arrest for robbery in the first degree and armed criminal action. Detective Meinhardt returned to speak with Defendant the next day, February 14, 2013, and showed him the warrants. Defendant waived his Miranda rights and wrote out a statement in which he admitted robbing Victim and apologized for taking Victim's car.

Defendant waived his right to a jury trial, and the court tried his case on May 12, 2014. Defendant moved to dismiss the charges, arguing the State had violated his right to a speedy trial, which the trial court denied. Defendant also moved to suppress his written statement as well as later statements he had made during recorded telephone calls from jail. He argued that all of these were made while he was being unlawfully detained without an arrest warrant longer than 24 hours. The trial court denied Defendant's motion and convicted him of robbery in the first degree and armed criminal action. The court sentenced Defendant to concurrent terms of thirteen years in prison for each offense. This appeal follows.

Discussion

Defendant raises four points on appeal. He argues the trial court erred in failing to dismiss the charges against him due to a violation of his right to a speedy trial. He also argues the trial court clearly erred in denying his motion to suppress his written statement

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

3

as well as portions of phone calls he made from jail, and finally, that there was insufficient evidence from which the trial court could find him guilty of armed criminal action.

## Point I

Defendant argues that the trial court erred in failing to dismiss the charges against him and in proceeding to trial because the 15-month delay between his arrest and his trial violated his constitutional right to a speedy trial. We disagree.

We review *de novo* whether a defendant's constitutional rights have been violated. State v. Sisco, 458 S.W.3d 304, 312-13 (Mo. banc 2015) (citing State v. Schroeder, 330 S.W.3d 468, 472 (Mo. banc 2011)). In so doing, we defer to the trial court's factual findings and credibility determinations. Id.

"The United States and Missouri Constitutions provide equivalent protection for a defendant's right to a speedy trial." State ex rel. McKee v. Riley, 240 S.W.3d 720, 729 (Mo. banc 2007). There is no bright-line test to determine a violation of this right, rather a "court must balance four factors: (1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant." Id. (citing Barker v. Wingo, 407 U.S. 514, 533 (1972)).

The first factor triggers the analysis, because until there is a delay that is presumptively prejudicial, we need not consider the other three factors. State ex rel. Garcia v. Goldman, 316 S.W.3d 907, 911 (Mo. banc 2010). In Missouri, a delay of eight months is presumptively prejudicial. Id. Here, the delay of 15 months between Defendant's arrest in February of 2013 and trial in May of 2014 is presumptively prejudicial, thus we must balance the other factors. See id.

4

Regarding the second factor, the reason for the delay, it is "incumbent upon the State to establish the reasons justifying the delay." State v. Mason, 428 S.W.3d 746, 750 (Mo. App. E.D. 2014), abrogated on other grounds by Sisco, 458 S.W.3d at 311-13. We assign different weights to different reasons for the delay. Mason, 428 S.W.3d at 750 (citing Garcia, 316 S.W.3d at 911). A deliberate attempt by the State to hinder the defense weighs heavily against the State. Mason, 428 S.W.3d at 750 (citing Barker, 407 U.S. at 531). Neutral reasons, such as overcrowded dockets or the State's negligence also weigh against the State, but less heavily. Id. Conversely, "[d]elays attributable to the defendant weigh heavily against the defendant." State v. Darnell, 858 S.W.2d 739, 745 (Mo. App. W.D. 1993) (internal quotations and citations omitted).

Here, the reasons for the delay are predominantly neutral. Once the trial court set a date for trial, it was not continued. Before that, while the record reflects several continuances of pretrial conferences, it notes no reason for each continuance. During that time period, Defendant changed attorneys and at one point indicated a desire to proceed *pro se.* At a pretrial conference on November 22, 2013, the trial court denied Defendant's motion to proceed *pro se* in light of Defendant's explanation that it was simply a misunderstanding with his attorney. We see nothing in the record indicating a deliberate attempt by the State to delay trial or hamper the defense. See State v. Fleer, 851 S.W.2d 582, 597 (Mo. App. E.D. 1993). The delay coinciding with Defendant's change of attorney was likely to allow time for new counsel to prepare, which is reasonable. Any weight against the State in the second factor is slight in this case.

The third factor is Defendant's assertion of his right to a speedy trial. Here, Defendant sent *pro se* letters to the court and the prosecutor requesting a speedy trial,

5

beginning in June of 2013. The trial court instructed Defendant regarding the Missouri Department of Corrections' form for requesting a speedy trial in November of 2013, which Defendant filed in January of 2014. Defendant asserted his right early in the proceedings and did so multiple times, thus this factor is weighed in his favor. Mason, 428 S.W.3d at 752.

Finally, the most important factor in our analysis is any resulting prejudice to Defendant. Id. We consider three additional factors in determining prejudice, the third of which is "the most vital to the analysis": (1) the oppressiveness of pretrial incarceration, (2) whether it unduly heightened the defendant's anxiety, and (3) the impairment of the defense. Id. (quoting State v. Newman, 256 S.W.3d 210, 216-17 (Mo. App. W.D. 2008)).

Here, Defendant argues his anxiety was evidenced by his repeated requests for a speedy trial. Defendant does not argue that the delay impaired his defense. Under the circumstances here, the evidence of the crime was memorialized in photographs and police reports, and it is unreasonable to believe Victim's memory as to who had robbed him was so eroded by the delay here as to cause him to mis-identify Defendant, especially when Victim had identified Defendant in a photographic lineup within a few months of the crime. Any impairment of the defense is speculative at best. Thus, in this particular case, the effects of the delay on Defendant are outweighed by the lack of impairment to his defense. See Mason, 428 S.W.3d at 752.

In view of all relevant factors, we find no error in the trial court's decision to proceed to trial in that under the circumstances, the delay here did not violate Defendant's constitutional right to a speedy trial. Point denied.

6

In both of Defendant's next points, he argues the trial court clearly erred in denying his motion to suppress his written statement to police as well as recordings of calls he made from jail containing incriminating statements. In Point II, he argues the trial court should have suppressed these statements because they were the fruit of an unlawful arrest. In Point III, he argues in addition that these statements should have been suppressed because he was unlawfully detained for more than 24 hours without an arrest warrant, in violation of Section 544.170, RSMo. (Cum. Supp. 2014). We disagree with both arguments.

We review a trial court's ruling on a motion to suppress for substantial evidence to support the ruling, reversing only if the ruling is clearly erroneous. State v. Faruqi, 344 S.W.3d 193, 199 (Mo. banc 2011). We view the facts and reasonable inferences in the light most favorable to the ruling. State v. Gaw, 285 S.W.3d 318, 319 (Mo. banc 2009).

### 1. Probable Cause to Arrest Defendant

First, Defendant argues that the trial court should have suppressed his statements because his warrantless arrest in Cuba, Missouri, violated his Fourth Amendment protection against unreasonable searches and seizures in that it was based only upon the "wanted" issued by Detective Meinhardt, rather than a warrant for Defendant's arrest. Defendant argues that any statements he made while in police custody, therefore, were the fruit of this unlawful arrest.

The "wanted" here was simply a way to inform other police officers that Defendant was involved in a robbery, and it gave other police officers authority to arrest

7

Defendant if they encountered him. Detective Meinhardt testified the "wanted" was different than an arrest warrant because it was not a statement of probable cause signed by a judge, as an arrest warrant is. See In re Green, 593 S.W.2d 518, 518 (Mo. banc 1979) (quoting Gerstein v. Pugh, 420 U.S. 103, 112 (1975)) ("arrest warrant may not issue unless there has been a finding of probable cause by a neutral and detached magistrate"). Thus, we consider the legality of Defendant's arrest as a warrantless arrest.

A warrantless arrest is valid where it is supported by probable cause. U.S. v. Watson, 423 U.S. 411, 417 (1976); State v. Garrett, 627 S.W.2d 635, 641 (Mo. banc 1982) (noting "[t]his proposition is so well recognized that it needs no authority"). "The necessary inquiry, therefore, was not whether there was a warrant or whether there was time to get one, but whether there was probable cause for the arrest." Watson, 423 U.S. at 417.[2]

Probable cause exists where "knowledge of the particular facts and circumstances is sufficient to warrant a prudent person's belief that a suspect has committed an offense." State v. Clayton, 995 S.W.2d 468, 477 (Mo. banc 1999) (quoting State v. Tokar, 918 S.W.2d 73, 767 (Mo. banc 1996)). The information supporting probable cause must be known to the officers before the arrest. Clayton, 995 S.W.2d at 477. It may be made up of the "collective knowledge and the facts available to all of the officers participating in the arrest; the arresting officer does not need to possess all of the available information." Id. (quoting State v. Mayweather, 865 S.W.2d 672, 675 (Mo. App. E.D. 1993)).

---

[2] Defendant argues essentially that for a warrantless arrest to be valid, there must have been exigent circumstances justifying the arrest. The United States Supreme Court has refused to adopt this requirement. See U.S. v. Watson, 423 U.S. 411, 450 (1975) (Stewart, J., dissenting) (Justice Stewart urging adoption of rule that police must obtain warrant before arrest except where exigent circumstances exist).

8

Moreover, "[i]nformation supplied by one police department can provide the probable cause for an officer in another police department to make an arrest." State v. Boyd, 784 S.W.2d 226, 228 (Mo. App. E.D. 1989). Radio bulletins, telephone calls, computer records, and police flyers have all been upheld as permissible means of authorizing officers to arrest, so long as the individual officer disseminating the information had probable cause to arrest at that time.[3] See U.S. v. Hensley, 469 U.S. 221, 231 (1985) (noting police may arrest on basis of wanted flyer, but admissibility of resulting evidence uncovered "turns on whether the officers who issued the flyer possessed probable cause to make the arrest") (citing Whiteley v. Warden, 401 U.S. 560, 568 (1971) (noting in making arrest, police are entitled to rely on message over police radio or reliable telephone communication from another police officer)); see also Arizona v. Evans, 514 U.S. 1, 15-16 (1995) (establishing exception to exclusionary rule when officer relies in good faith on erroneous computer record stating defendant had outstanding warrant for arrest); State v. Franklin, 841 S.W.2d 639, 643 n.4 (Mo. banc 1992) (noting no rational distinction between stop made in reliance on police radio dispatch or wanted flyer; citing cases).

In such a case, the State must show that the officer who provided the information had probable cause that would have enabled the officer to make the arrest himself. State v. Kinkead, 983 S.W.2d 518, 519 (Mo. banc 1998). If it is later apparent that the officer

---

[3] These types of police communications can also support an investigative stop, rather than an arrest, where police have reasonable suspicion the person stopped has committed a crime, rather than probable cause. See U.S. v. Hensley, 469 U.S. 221, 232 (1985) (citing Terry v. Ohio, 392 U.S. 1, 21-22 (1968)) ("We conclude that, if a flyer or bulletin has been issued on the basis of articulable facts supporting a reasonable suspicion that the wanted person has committed an offense, then reliance on that flyer or bulletin justifies a stop to check identification. . . . [E]vidence uncovered in the course of the stop is admissible if the police who *issued* the flyer or bulletin possessed a reasonable suspicion justifying a stop, . . . and if the stop that in fact occurred was not significantly more intrusive than would have been permitted the issuing department").

requesting assistance in arresting the accused did not have probable cause for the arrest, evidence obtained incident to the arrest may be suppressed.[4] See Whiteley, 401 U.S. at 568 (holding because radio bulletin message at issue was unsupported by probable cause, exclusionary rule applied to evidence uncovered during search incident to arrest); but see Evans, 514 U.S. at 13 (noting Whiteley's "precedential value regarding application of the exclusionary rule is dubious").

Here, the trial court's denial of Defendant's motion to suppress is supported by substantial evidence because the record reflects that probable cause existed for Defendant's arrest. Detective Meinhardt had gathered surveillance footage depicting Defendant in the area of the robbery at the time of the robbery. Nunn had identified Defendant in those photos and had said that she received the stolen cell phone and laptop from Defendant, who wanted her to sell it. Victim had identified Defendant in a photographic lineup as the person who robbed him. This was sufficient to warrant a prudent person's belief that Defendant had robbed Victim, and Detective Meinhardt was cognizant of this information at the time he disseminated the "wanted." We see no discernable difference between Detective Meinhardt's telephone call and subsequent sending of the "wanted," and a radio bulletin or a police flyer. See Franklin, 841 S.W.2d at 643. The crux is whether the communication was supported by probable cause, and here it was. While an arrest warrant would have provided clear evidence of probable cause as opposed to the tenuous nature of a "wanted," the Cuba police department's reliance on the "wanted" was lawful under the circumstances here. Thus, any statements

---

[4] Additionally, in certain instances, officers relying on objectively unreasonable communication may incur civil liability for an unlawful arrest. See U.S. v. Celio, 945 F.2d 180, 184 (7th Cir. 1991) (citing cases).

10

Defendant made thereafter are not subject to exclusion for unlawful arrest. Point II denied.

### 2. Section 544.170

Defendant also argues that the trial court should have suppressed his statements because he made them after being detained without an arrest warrant for longer than Missouri's statutory limit of 24 hours. Section 544.170 provides that any person being held without a warrant "shall be discharged from said custody within twenty-four hours from the time of such arrest, unless they shall be charged with a criminal offense by the oath of some credible person, and be held by warrant to answer to such offense." Here, Detective Meinhardt conceded that it was over 24 hours from the time of Defendant's initial arrest in Cuba, Missouri, to the time that Detective Meinhardt obtained an arrest warrant for robbery in the first degree and armed criminal action.

Because law enforcement could have avoided this scenario entirely by initially obtaining an arrest warrant for Defendant, it is troubling that law enforcement failed to obtain an arrest warrant within the 24-hour statutory period following Defendant's arrest by the Cuba police on the "wanted." From the record, probable cause existed well before Defendant's arrest.[5] Additionally, Detective Meinhardt testified that he had received multiple phone calls from Defendant's family members, whom he had contacted early on during his investigation. Detective Meinhardt said they called to let him know that Defendant had come to Defendant's mother's home in Cuba, Missouri, and they wanted Defendant to leave. It was these phone calls that led Detective Meinhardt to contact the Cuba police and send them a copy of the "wanted." It appears from the record that at any

---

[5] Detective Meinhardt created the "wanted" on December 4, 2012. We have already determined that the "wanted" was supported by probable cause.

11

time during this period, Detective Meinhardt could have sought an arrest warrant for Defendant.

Regardless, Section 544.170 "addresses only the length of time an arrestee can be held without being formally charged; it does not address probable cause for an arrest." State v. Ard, 11 S.W.3d 820, 827 (Mo. App. S.D. 2000). As we have already determined, it is clear that law enforcement had probable cause to arrest Defendant here.

Beyond that, the question is whether Defendant's statements were voluntary. "[A] violation of Section 544.170 does not automatically make a statement involuntary." State v. Heckadon, 400 S.W.3d 526, 527 (Mo. App. S.D. 2013); see also Roberts v. State, 476 S.W.2d 490, 494 (Mo. banc 1972) (deciding under prior version of statute containing 20-hour limit that "detention beyond the statutory limit, standing alone, is not sufficient to make an otherwise voluntary statement involuntary"). Defendant does not argue that his statements were otherwise involuntary beyond the Section 544.170 violation, and we see no evidence to that effect.

Moreover, while "persons without a warrant must promptly be brought before a neutral magistrate for a judicial determination of probable cause," the United States Supreme Court has determined that such determination within 48 hours of arrest complies with the Fourth Amendment, so long as no unreasonable delays are present, such as a delay for the sake of gathering additional information to justify the arrest or a delay motivated by ill will. County of Riverside v. McLaughlin, 500 U.S. 44, 53, 56 (1991). "Courts cannot ignore the often unavoidable delays in transporting arrested persons from one facility to another, handling late-night bookings where no magistrate is readily available, obtaining the presence of an arresting officer who may be busy processing

12

other suspects or securing the premises of an arrest, and other practical realities." Id. at 56-57.

Here, Detective Meinhardt obtained an arrest warrant within 48 hours of Defendant's arrest. Detective Meinhardt testified that Cuba police arrested Defendant in the evening of February 12, 2013, or the early hours of February 13. Detective Meinhardt first interviewed Defendant on the afternoon of February 13, and he obtained an arrest warrant the following day. There is no evidence that law enforcement intentionally delayed obtaining arrest warrants. Further, there is nothing to suggest that the delay in obtaining an arrest warrant here was due to anything other than the time it took to transport Defendant from Cuba, Missouri, to University City, Missouri, or other practical realities involved in law enforcement. See id.

Thus, while law enforcement must scrupulously uphold the 24-hour time limit in Section 544.170[6]; in this particular circumstance, the trial court did not clearly err in denying Defendant's motion to suppress on this basis. Point III denied.

## Point IV

Last, Defendant argues that there was insufficient evidence to support his conviction for armed criminal action because the evidence did not establish beyond a reasonable doubt that he actually used a gun in robbing Victim. We disagree.

We review challenges to the sufficiency of the evidence to determine whether there is sufficient evidence in the record from which a reasonable factfinder could conclude that the defendant was guilty beyond a reasonable doubt. State v. Fortner, 451 S.W.3d 746, 755 (Mo. App. E.D. 2014). We accept as true all evidence and reasonable

---

[6] A violation of Section 544.170 is not without consequence. While such violation may not necessarily invalidate the arrest or require exclusion of resulting statements or evidence, any person who intentionally violates Section 544.170 is guilty of a class A misdemeanor. Section 544.170.3.

13

inferences in favor of the State and disregard all evidence and inferences to the contrary. Id.

Section 571.015.1 provides that a person commits armed criminal action when he or she commits "any felony . . . by, with, or through the use, assistance, or aid of a dangerous instrument or deadly weapon." RSMo. (2000). A gun is a statutorily defined deadly weapon. Section 556.051(22), RSMo. (Cum. Supp. 2014).

Here, Victim testified that Defendant pointed a gun at him and demanded his car keys. Defendant points out that Victim admitted on cross-examination that he had never before seen a real gun, that he was seven to ten feet away from Defendant, Defendant was holding up a black object with his arm parallel to the ground, and Victim assumed that it was a gun. Defendant argues that this testimony, coupled with Nunn's testimony that Defendant carried a stun gun rather than a real gun, renders the trial court's conviction the result of speculation.

However, the testimony of a single witness is sufficient to support a conviction, even if that testimony is inconsistent. See State v. Shaw, 602 S.W.2d 17, 19 (Mo. App. E.D. 1980). Victim's testimony that he saw Defendant point a gun at him was sufficient evidence from which the trial court could conclude defendant had a gun. Victim's testimony on cross-examination and the other evidence that Defendant only carried a stun gun were matters for the trial court to weigh and resolve as the factfinder. See State v. Holman, 230 S.W.3d 77, 83 (Mo. App. S.D. 2007) (factfinder resolves conflicts in evidence and may believe all, part, or none of witness' testimony). Viewing the evidence as Defendant urges would be to grant him the benefit of inferences from the evidence, which is in direct opposition to our standard of review.

14

There was sufficient evidence in the record from which the trial court could find Defendant guilty of armed criminal action. Point denied.

## Conclusion

The trial court did not err in proceeding to trial because under the circumstances here, the 15-month delay between Defendant's arrest and his trial did not violate his constitutional right to a speedy trial. The trial court also did not clearly err in denying Defendant's motion to suppress incriminating statements he made in police custody and later from jail because they were not the fruit of an unlawful arrest. Additionally, in absence of any evidence that the delay in obtaining warrants was unreasonable, Defendant's statements were not rendered involuntary by the fact that the State held him for over 24 hours in violation of Section 544.170. Finally, there was sufficient evidence from which the trial court could find Defendant guilty of armed criminal action. The judgment of the trial court is affirmed.

Gary M. Gaertner, Jr., Judge

Philip M. Hess, P.J., concurs.
Angela T. Quigless, J., concurs.

15