Angela T. Quigless, J.
*556 Lamont Campbell ("Defendant") appeals from the judgment of the trial court convicting him of one count of first-degree murder and one count of armed criminal action following a jury trial. Defendant raises three points on appeal, arguing the trial court: (1) abused its discretion in denying his request to strike a potential juror for cause; (2) erred in sentencing him to life in prison with eligibility for parole, pursuant to Section 565.033,[1] because the statute was an unconstitutional ex post facto law as applied to him; and (3) erred in denying his claim that the State failed to disclose exculpatory evidence, in violation of Brady v. Maryland .[2] We affirm the judgment.
Factual and Procedural Background
Defendant was charged in 2011 with first-degree murder and armed criminal action for the death of Leonard Gregory, III ("Victim"). Defendant, who was seventeen years old at the time of the murder, was first tried by a jury in 2013, but the trial court declared a mistrial after the jury was unable to reach a verdict. Following a second jury trial in 2016, Defendant was convicted of first-degree murder and armed criminal action. After Defendant waived jury sentencing, the court sentenced him to life in prison with the possibility for parole on the murder charge, and twenty years on the armed criminal action charge.
A. Evidence
Defendant does not challenge the sufficiency of the evidence to support his convictions. Viewed in the light most favorable to the verdict, the evidence presented during Defendant's second jury trial established that, on July 17, 2011, Victim was driving his vehicle on the 2800 block of Chariton Street in the City of St. Louis. After someone fired multiple shots at Victim's vehicle, it crashed into some parked cars. As Victim lay slumped over in the driver's seat, Defendant ran up to the driver's side window and fired three shots from a revolver at close range, striking Victim in the shoulder and the head, killing him.
Three individuals witnessed the shooting, including a husband and wife, and a neighbor, all of whom lived near where the shooting took place. All three witnesses described the shooter to the police as a young, African-American male, approximately five-foot six inches tall with short hair, wearing a white shirt, black pants, and dark shoes. Based on this description, the police compiled a photo lineup, which included a photo of Defendant. The husband and wife both independently identified Defendant as the shooter, both from the photo lineup as well as in a subsequent in-person lineup. The neighbor also identified Defendant as the shooter in a photo lineup. All three witnesses testified at trial and identified Defendant as the shooter.
*557 B. Trial Proceedings
Defendant was represented by two different attorneys during his first trial and second trial. The attorney who represented Defendant during his first trial ("First Counsel") learned shortly after trial that an individual named Randolph Thornton ("Thornton") claimed Victim had a dispute with a black male nicknamed "Bird" in the days before the murder, and that "Bird" claimed he shot Victim because Victim disrespected his sisters. On October 7, 2013, First Counsel endorsed Thornton as a witness for Defendant's retrial. The State was not aware of Thornton's existence prior to this endorsement. In response, a police detective and an investigator from the circuit attorney's office interviewed Thornton. During the interview, Thornton stated that the "word on the street" was that "Bird" shot Victim. Thornton described "Bird" as having long hair. Thornton then became uncooperative and stated, "I'm not going to help either side." Neither detective took notes concerning the interview because they believed Thornton's statements were not reliable or consistent with the statements from the other three eye witnesses, all of whom described the shooter as having short hair.
On January 23, 2015, First Counsel filed a second endorsement of Thornton as a witness for Defendant's retrial. On April 27, 2015, Defendant wrote a letter to the trial court stating, "It was also brought to my attention that a person went to the District Attorney's Office and stated that I was not the person who committed this crime, and this person also stated that he knows who did commit this crime."
Before Defendant's retrial, First Counsel withdrew from the case and a different attorney entered an appearance to represent Defendant ("Second Counsel"). During pre-trial discovery, the State did not provide Second Counsel with any information regarding the interview with Thornton. Following Defendant's retrial and conviction, Second Counsel filed a Brady motion alleging the State failed to disclose evidence related to the State's interview with Thornton, which was favorable to his defense. The court denied the motion, finding the evidence was favorable to his defense and the State was obligated to disclose it, but Defendant suffered no prejudice because the evidence would not have been admissible at trial as it was hearsay with insufficient indicia of reliability to qualify for admission as a statement against penal interest.
Prior to the retrial, Defendant filed a motion to dismiss the charges, arguing the recently amended statute prescribing the sentence for first-degree murder, Section 565.033, would be an unconstitutional ex post facto law as applied to Defendant because it became effective on July 13, 2016, which was five years after the murder. The trial court denied this motion, finding Section 565.033 was applicable to Defendant's case.
During jury selection, Defendant moved to strike Juror 714 for cause, arguing his responses during voir dire demonstrated he was not qualified to serve as a juror because he said it would be "very difficult" for him to follow one of the court's instructions concerning the factors to consider when determining the credibility of eye witness identification. The trial court denied Defendant's request to strike Juror 714 for cause, however Juror 714 ultimately did not serve on the jury.
Following the presentation of evidence, the jury convicted Defendant of first-degree murder and armed criminal action. Defendant waived jury sentencing, and the trial court sentenced Defendant to life in prison, pursuant to Section 565.033. Defendant filed a motion for a new trial, which was denied. This appeal follows. Additional *558 facts will be set forth the in the Discussion section of this Memorandum as necessary to address the issues raised.
Points on Appeal
Defendant asserts three points on appeal. In Point I, Defendant argues the trial court abused its discretion in failing to strike Juror 714 for cause because the juror was unable to follow the court's instructions, in that he was unable to consider the portion of the eyewitness identification instruction that discussed cross-racial misidentification when determining the reliability of the eyewitness identifications. In Point II, Defendant argues the trial court erred in denying his motion to dismiss and imposing a sentence, pursuant to Section 565.033, because the sentence for first-degree murder under Section 565.033 was a greater punishment than the punishment set forth in State v. Hart ,[3] in that Defendant's case did not qualify for a sentence of life without eligibility for parole. In Point III, Defendant argues the trial court abused its discretion in denying his claim under Brady v. Maryland because the State failed to disclose evidence regarding a potential alternate perpetrator that was favorable to the defense.
Discussion
I. Point One-Jury Selection
During oral arguments, Defendant withdrew his claim in Point I. Defendant acknowledged that the jury panel list, which was not made part of the record, indicates Juror 714 did not serve on the jury. Defendant conceded this fact was fatal to his claim that the trial court abused its discretion in failing to strike Juror 714 for cause. A conviction cannot be challenged based on the trial court's failure to strike for cause a prospective juror "unless such juror served upon the jury at the defendant's trial and participated in the verdict rendered against the defendant." Section 494.480.4. When a "prospective juror [does] not sit on the jury and participate in the verdict, [defendant] is precluded from challenging the trial court's refusal to strike that prospective juror for cause." State v. Gill , 167 S.W.3d 184, 194 (Mo. banc 2005). Accordingly, Point I is denied.
II. Point Two-Ex Post Facto Law
Defendant's argument in Point II that Section 565.033 was an unconstitutional ex post facto law as applied to him lacks merit because the enactment of Section 565.033 did not increase the penalty for first-degree murder. See State v. Pitts , 852 S.W.2d 405, 407 (Mo. App. E.D. 1993) ; Miller v. Florida , 482 U.S. 423, 433, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987).
We review a constitutional challenge to a statute de novo. State v. Harris , 414 S.W.3d 447, 449 (Mo. banc 2013). We presume the statute is valid and will not find it unconstitutional "unless it clearly contravenes a constitutional provision." Id. (quoting State v. Mixon , 391 S.W.3d 881, 883 (Mo. banc 2012) ). The individual challenging the validity of the statute bears the burden of proving the enactment "clearly and undoubtedly violates the constitution." Id.
Article I, Section 13 of the Missouri Constitution provides "no ex post facto law ... can be enacted." The Missouri Constitution's ban on ex post facto laws is coextensive with the Ex Post Facto Clause in Article 1, Section 9 of the United States Constitution. Harris , 414 S.W.3d at 449 ; see U.S. CONST. art. I, § 10, cl. 1 ("No State shall ... pass any Bill of Attainder, ex post facto Law, or Law impairing the *559 Obligation of Contracts, or grant any Title of Nobility."). "Although interpretations of the two federal provisions are not binding on this Court's interpretation of the Missouri provision, they are 'strongly persuasive.' " Harris , 414 S.W.3d at 449. A statute violates the prohibition against ex post facto laws if it: (1) applies to conduct completed before the statute's enactment, and (2) increases the penalty for the crime beyond what the law provided when the defendant acted. Id.
At the time Defendant committed the murder in 2011, the sentence for first-degree murder was governed by Section 565.020, which allowed two possible sentences: death or mandatory life imprisonment without the possibility for parole. In Roper v. Simmons , the United States Supreme Court held a sentence of death is unconstitutional under the Eighth Amendment's prohibition against cruel and unusual punishment as applied to an individual, such as Defendant, who was a minor at the time of the offense. 543 U.S. 551, 578, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005). In 2012, the United States Supreme Court similarly held in Miller v. Alabama that a sentencing scheme that mandates life in prison without the possibility for parole is unconstitutional as applied to an individual who was a minor at the time of the offense, and that a court must conduct an individualized assessment and consider certain mitigating factors prior to imposing a sentence of life without the possibility for parole. 567 U.S. 460, 479, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012). The holdings in Roper and Miller , taken together, appeared to invalidate the only two possible sentences for first-degree murder under Section 565.020.2 as applied to an individual who was a minor at the time of the offense. See Hart , 404 S.W.3d at 237.
Addressing the effect of the holdings in Roper and Miller on Section 565.020, the Missouri Supreme Court in Hart rejected an argument that the statute was void as applied to juvenile offenders because it did not provide at least one constitutionally valid punishment. Id. Instead, the Court held that, prior to sentencing a juvenile offender to life in prison without the possibility for parole, the sentencer must conduct an "individualized assessment" to determine whether that sentence is "just and appropriate" for the defendant, in light of the mitigating factors outlined in Miller , including "the offender's age, age-related factors and other surrounding circumstances." Id. at 242. The Court further held that, if the sentencer found life without the possibility for parole was not just and appropriate under the circumstances, then Section 565.020 is void as applied for lack of a valid punishment, and the court must vacate the conviction for first-degree murder, enter a new conviction for the lesser-included offense of second-degree murder, and impose a sentence within the applicable sentencing range for second-degree murder. Id. at 235.
In 2013, the General Assembly enacted Sections 565.033 and 565.034, which amended the sentencing scheme and sentencing procedures for first-degree murder as applied to juvenile offenders in multiple ways. S.B. 590, 98th Gen. Assemb., 2nd Reg. Sess. (Mo. 2016). Section 565.033.1 created two new sentencing options, in addition to life imprisonment without the possibility for parole: (1) life imprisonment with eligibility for parole , and (2) imprisonment for thirty-to-forty years. Section 565.033.1 (emphasis added). Section 565.033.2 provided that "[w]hen assessing punishment in all first degree murder cases in which the defendant was under the age of eighteen at the time of the commission of the offense, the [sentencer] shall consider" ten specifically-enumerated *560 factors,[4] which incorporate many of the youth-related factors set forth by the United States Supreme Court in Miller v. Alabama , 567 U.S. at 476-79, 132 S.Ct. 2455, and the Missouri Supreme Court in Hart , 404 S.W.3d at 242, 244. See Ramirez v. Griffith , No. 16-CV-01058-W-DW, 2016 U.S. Dist. LEXIS 193206, at *7 (W.D. Mo. Dec. 2, 2016) ("[Section 565.033.2] thus incorporates many of the youth-related concerns identified in Miller , such as the offender's age and maturity, his family environment, the circumstances of the offense, and prospects for rehabilitation.")
Section 565.034 created specific procedures the State and the court must follow when seeking the maximum sentence of life without the possibility for parole, including: notifying the court and the defendant of the intent to seek this sentence within 120 days after arraignment, Section 565.034.1; bifurcating the defendant's trial into a guilt phase and a penalty phase, Section 565.034.4-5; and requiring the sentencer to find, beyond a reasonable doubt, the existence of at least two aggravating factors, including that: (1) the victim died as a result of injuries personally inflicted by the defendant, and (2) one of nine other enumerated aggravating factors was present, Section 565.034.6.
We find Section 565.033 is not an ex post facto law because the statute did not increase the penalty for first-degree murder beyond what the law provided at the time Defendant committed the crime. See Harris , 414 S.W.3d at 449. At the time of the offense, the only possible sentence for first-degree murder committed by a minor was mandatory life imprisonment without the possibility for parole. See State v. Andrews , 329 S.W.3d 369, 376 (Mo. banc 2010) ("Because Roper removed the possibility of sentencing a minor to death, § 565.020 makes life without parole the only sentence available for a minor found guilty of first degree murder."). Under Miller and Hart , both of which were decided while Defendant's case was pending, life without the possibility for parole remained the only possible sentence for first-degree murder committed by a minor. See Miller v. Alabama , 567 U.S. at 479, 132 S.Ct. 2455 ; Hart , 404 S.W.3d at 242. The enactment of Section 565.033 maintained life imprisonment without the possibility for parole as the maximum possible sentence, but created options for two lesser sentences. Defendant was sentenced to one of the lesser sentences created by Section 565.033, life in prison with eligibility for parole. Therefore, the enactment of Section 565.033 did not increase the punishment *561 for first-degree murder, either generally or in Defendant's case specifically.
Although Miller , Hart , and Section 565.033 each changed the procedures required for sentencing a juvenile to life without the possibility for parole, they did not change the fact that life without the possibility for parole was still a statutorily prescribed punishment for first-degree murder. Whether the sentencing court followed the sentencing procedures set forth in Hart or the procedures provided in Section 565.033, a juvenile convicted of first-degree murder could constitutionally be sentenced to life without the possibility for parole. Therefore, Section 565.033 cannot be deemed unconstitutional as an ex post facto law because it did not increase the punishment for first-degree murder beyond that provided at the time of the offense. See Harris , 414 S.W.3d at 449.
Nonetheless, Defendant argues Section 565.033 increased the punishment in his case because "Defendant's case does not qualify for a sentence of life without eligibility for parole" under Hart in that none of the evidence presented at trial supported a finding that that sentence was "just and appropriate" under the circumstances of this case. Defendant argues, therefore, the court was required, under Hart , to vacate the guilty finding for first-degree murder, enter a conviction for second-degree murder, and sentence Defendant according to the applicable sentencing range under Section 558.011.1(1), which was ten-to-thirty years in prison, or life with eligibility for parole. Defendant asserts, therefore, that Section 565.033 increased the punishment he faced by allowing a conviction for first-degree murder and a possible sentence of life without the possibility for parole. We disagree.
Defendant does not explain, and cites no evidence to support, his conclusion that the sentencing court would have found a sentence of life without the possibility for parole was not "just and appropriate" under the standard set forth in Hart . The court made no such findings because the court did not apply the standard in Hart . Given the record, it is impossible for us to determine whether the judge would have found that sentence just and appropriate after considering the age-related factors identified in Miller and Hart . Because Defendant fails to cite any evidence to support this part of his argument, we deem it has been abandoned. See State v. Oswald , 14 S.W.3d 678, 680 (Mo. App. W.D. 2000) (holding that if an argument is not developed in appellant's brief, it is deemed abandoned). "It is not this Court's duty or place to comb through the record, ferreting out facts, to gain an understanding of the case." Blanks v. Fluor Corp. , 450 S.W.3d 308, 324 n.1 (Mo. App. E.D. 2014) ; see also State v. Cotton , 32 S.W.3d 577, 581 (Mo. App. W.D. 2000).
The jury found Defendant guilty of first-degree murder. Therefore, under Hart , Defendant could have been sentenced to life without the possibility for parole if the court found that sentence "just and appropriate" under the circumstances after considering the relevant mitigating factors. Because the sentencing court concluded that Section 565.033 was applicable, Defendant only faced a maximum sentence of life in prison with eligibility for parole.[5] Sentencing a defendant pursuant to a subsequently *562 enacted statute that reduces the punishment for the defendant's crime does not violate the ex post facto clause. State v. Sumlin , 820 S.W.2d 487, 492 (Mo. banc 1991) (holding RSMo 1.169 (1986), which required amendments to statutes reducing the penalty for an offense to be applied to defendants whose cases were pending at the time of the amendment, was not unconstitutional because reducing a penalty does not violate the ex post facto clause). Because Section 565.033 decreased, rather than increased , the penalty Defendant was facing for his crime, the statute did not violate Defendant's constitutional right to be free from ex post facto laws. See id.
Accordingly, we find the trial court did not err in sentencing Defendant, pursuant to Section 565.033, to life in prison with eligibility for parole. Section 565.033 is not unconstitutional as an ex post facto law because it did not increase the punishment for first-degree murder. Point III is denied.
III. Point Three- Brady Claim
Defendant's argument that the trial court erred in denying his Brady claim lacks merit because Defendant was already aware of the evidence he alleges the State failed to disclose. See State v. Nathan , 522 S.W.3d 881, 884-85 (Mo. banc 2017).
A claim that the State failed to disclose exculpatory evidence asserts a violation of the defendant's constitutional right to due process under the Fourteenth Amendment to the United States Constitution. Brady , 373 U.S. at 86, 83 S.Ct. 1194. Whether a defendant's constitutional rights were violated is a question of law, which this Court reviews de novo. State v. Sisco , 458 S.W.3d 304, 312-13 (Mo. banc 2015) ; State v. Pate , 469 S.W.3d 904, 908 (Mo. App. E.D. 2015).[6]
"Pursuant to Brady , due process is violated where the State suppresses evidence favorable to the accused that is material with respect to either guilt or punishment." McDaniel v. State , 460 S.W.3d 18, 24 (Mo. App. E.D. 2014) (citing Barton v. State , 432 S.W.3d 741, 761 (Mo. banc 2014) ). A constitutional violation occurs " 'irrespective of the good faith or bad faith of the prosecution.' " Nathan , 522 S.W.3d at 884 (quoting Brady , 373 U.S. at 87, 83 S.Ct. 1194 ).
A prosecuting attorney has a broad duty "to disclose evidence in [his or her] possession that is favorable to the accused and material to guilt or punishment." A prosecuting attorney violates due process if (1) he or she does not disclose evidence that is favorable to the accused because it is either exculpatory or impeaching, (2) the prosecuting attorney *563 has suppressed the evidence, either intentionally or inadvertently, and (3) the undisclosed evidence is material.
State v. Parker , 198 S.W.3d 178, 179-80 (Mo. App. W.D. 2006) (quoting State v. Goodwin , 43 S.W.3d 805, 812 (Mo. banc 2001), and citing Strickler v. Greene , 527 U.S. 263, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999) ).
However, "[i]f the defendant had knowledge of the evidence at the time of trial, the state cannot be faulted for non-disclosure." Nathan , 522 S.W.3d 881, 884-85 ; see also State v. Moore , 411 S.W.3d 848, 855 (Mo. App. E.D. 2013) ("[T]here can be no Brady violation where the defendant knew or should have known of the material or where the information was available to the defendant from another source."). In Nathan , the Missouri Supreme Court held no Brady violation occurred where the State failed to disclose to the defendant a police report because the defendant "had knowledge of the contents of the police report" prior to trial. Nathan , 522 S.W.3d at 884-85. The court noted that Defendant was aware of the evidence prior to trial because the contents of the police report included information the defendant had himself disclosed to a caseworker during a prior investigation. Id. at 181. The court concluded, therefore, the State did not commit a Brady violation because defendant was aware of the evidence the State failed to disclose. Id.
Here, as is Nathan , Defendant was clearly aware of the evidence he alleges the State failed to disclose. The evidence consisted of statements from Thornton, who claimed a third party had confessed to the murder. The State only learned about this witness after First Counsel endorsed Thornton as a witness shortly after Defendant's first trial. In fact, First Counsel endorsed Thornton twice prior to Defendant's second trial. It is unclear from the record when Second Counsel became aware of the existence of Thornton. However, it is undisputed that the endorsements of Thornton as a witness filed by First Counsel were part of the record, which Second Counsel had access to. Moreover, Defendant himself was personally aware of Thornton because, prior to his second trial, Defendant wrote a letter to the judge stating, "It was also brought to my attention that a person went to the District Attorney's Office and stated that I was not the person who committed this crime, and this person also stated that he knows who did commit this crime."[7]
Courts have consistently held that there is no Brady violation where the defendant was aware of the evidence the State failed to disclose. See Moore , 411 S.W.3d at 855 *564 (collecting cases). This rule applies with even greater force where, as here, the evidence the State failed to disclose originated with the Defendant. See Nathan , 522 S.W.3d at 884-85. We recognize there may be situations where the State could violate Brady by failing to disclose evidence concerning a witness Defendant was aware of, such as if the witness made exculpatory statements to an investigator about which the Defendant was not aware. Here, however, Defendant's letter to the court, written prior to his second trial, indicated he was fully aware of the substance of Thornton's statements that a different individual had confessed to the murder. Accordingly, we find the trial court did not err in denying Defendant's claim that the State committed a Brady violation by suppressing exculpatory evidence. Point III is denied.
Conclusion
The judgment of the trial court is affirmed.
Roy L. Richter, P.J., and Robert M. Clayton III, J., concur.

All references to Sections 565.033 and 565.034 are to RSMo (2016). All other statutory references are to RSMo 2000, unless otherwise indicated.

Brady v. Maryland , 373 U.S. 83, 86, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

State v. Hart , 404 S.W.3d 232 (Mo. banc 2013).

The factors listed in Section 565.033.2 include the following:
(1) The nature and circumstances of the offense committed by the defendant;
(2) The degree of the defendant's culpability in light of his or her age and role in the offense;
(3) The defendant's age, maturity, intellectual capacity, and mental and emotional health and development at the time of the offense;
(4) The defendant's background, including his or her family, home, and community environment;
(5) The likelihood for rehabilitation of the defendant;
(6) The extent of the defendant's participation in the offense;
(7) The effect of familial pressure or peer pressure on the defendant's actions;
(8) The nature and extent of the defendant's prior criminal history, including whether the offense was committed by a person with a prior record of conviction for murder in the first degree, or one or more serious assaultive criminal convictions;
(9) The effect of characteristics attributable to the defendant's youth on the defendant's judgment; and
(10) A statement by the victim or the victim's family member[.]

Although Section 565.033 permits a maximum possible sentence of life without the possibility for parole, the court did not have the authority to impose that sentence in this case because the State did not notify Defendant of an intent to seek the maximum sentence, as would have been required by Section 565.034.1. However, even if the State had complied with the procedures for seeking a sentence of life without the possibility for parole, this would not have resulted in an increase in the penalty because Hart also permitted a sentence of life without the possibility for parole.

Defendant asserts, without citation to authority, that abuse of discretion is the applicable standard of review. Similarly, the State argues the proper standard of review is abuse of discretion, citing State v. Peeples , 288 S.W.3d 767, 775 (Mo. App. E.D. 2009) (reviewing for abuse of discretion the denial of defendant's motion for a new trial based on the State's alleged suppression of evidence in violation of Brady ); see also State v. Reed , 334 S.W.3d 619, 625 (Mo. App. E.D. 2011) (reviewing for abuse of discretion trial court's decision to sanction the State for a Brady violation). While we acknowledge that various trial court decisions, such as denying a motion for a new trial and imposing sanctions, are reviewed for an abuse of discretion, the question whether a defendant's constitutional rights were violated is always a question of law, which we review de novo. Sisco , 458 S.W.3d at 312-13 ; Pate , 469 S.W.3d at 908. Nonetheless, to the extent Defendant claims the trial court abused its discretion in ruling on his Brady motion, we find no abuse of discretion. Because the trial court did not err in finding no Brady violation occurred, the trial court did not abuse its discretion in denying Defendant's Brady motion.

In denying Defendant's Brady claim, the trial court found Defendant's letter to the court regarding the statements by Thornton indicated Defendant "had information about Thornton but decided not to tell his lawyer about this information." However, the court concluded this fact alone was insufficient to deny Defendant's Brady claim, instead finding Defendant suffered no prejudice because the Thornton's statements would not have been admissible at trial. We defer to the trial court's factual finding that Defendant was aware of Thornton and the nature of his testimony prior to his second trial. However, we disagree with the trial court's legal conclusion that Defendant's knowledge of the evidence the State allegedly failed to disclose is insufficient to defeat his Brady claim. Moreover, we note the court apparently did not take into consideration the fact that the State actually learned about Thornton from the Defendant when he was endorsed as a defense witness. This fact indicates that Defendant was not only aware of the evidence, but that Defendant was the source of the evidence. Under these circumstances, a Brady claim cannot stand. See Nathan , 522 S.W.3d at 884-85. We will affirm the trial court where it reached the correct result, even if for the wrong reason. State v. McMillian , 524 S.W.3d 51, 54 (Mo. App. W.D. 2016).